[Civ. No. 46505. Second Dist., Div. Three. Apr. 30, 1976.]

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
Plaintiff and Appellant, v.
AUTO SPRING SUPPLY COMPANY et al.,
Defendants and Respondents.

COUNSEL

Morgan, Wenzel & McNicholas and Gerald E. Agnew, Jr., for Plaintiff and Appellant.

Latham & Watkins, Michael J. Shockro and Lance B. Wickman for Defendants and Respondents.

OPINION

**COBEY, J.**—Plaintiff, Liberty Mutual Fire Insurance Company (hereafter Liberty) appeals from an adverse judgment in its subrogation action against defendant, Auto Spring Supply Company (hereafter Auto) and Henry Beacham. The appeal lies (Code Civ. Proc., § 904.1, subd. (a)), but we find no reversible error and will therefore affirm.

## FACTS

On May 26, 1968, a fire damaged a building in Pico Rivera. Liberty then had outstanding a fire insurance policy covering the building in which Title Insurance and Trust Company (hereafter T.I.T.) was the named insured.[1] Thereafter in 1968 Liberty paid to T.I.T. $47,488—the cost of repairing the fire damage to the building. At the time of the fire, Auto was operating a manufacturing plant in the building and the other defendant was employed there.

Very shortly after the fire Liberty informed T.I.T. that it was considering filing suit against Auto to recover the fire loss. On August 15, 1969, Liberty did just this by initiating the subrogation action before us. On August 6, 1974, two days before the trial of the action commenced, T.I.T. gratuitously, but purportedly pursuant to Liberty's policy,[2] executed a release and waiver of its entire right of recovery against Auto for the aforementioned fire loss.

At the time of the fire Auto was renting the building damaged by the fire under a sublease, executed in June of 1959. A portion of the rent payable by Auto under the sublease covered the premium on Liberty's policy which was carried by the sublessor of the building under its lease with the owner. According to the testimony of one of the original lessors, she and her co-lessor looked only to the insurance for recovery in the event of fire loss to any of the buildings insured under the lease. Moreover, under both the lease and the sublease the proceeds of such insurance were to be used wholly or partially to repair repairable fire damage. Furthermore, on the basis of the lessee's oral representation to

---

[1] T.I.T. is the executor of the estate of one of the original lessors (Henry Mezori) of the fire damaged building. The other original lessor was his wife Margaret. For convenience throughout this opinion we will refer generally to T.I.T. as the lessor of the building.

[2] In pertinent part the relevant paragraph of Liberty's policy reads:

"13. SUBROGATION WAIVER CLAUSE: This insurance shall not be prejudiced by agreement made by the named Insured releasing or waiving the named Insured's right of recovery against third parties responsible for the loss, under the following circumstances:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(B) IF MADE AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN ONLY IN FAVOR OF A THIRD PARTY FALLING WITHIN ONE OF THE FOLLOWING CATEGORIES AT THE TIME OF LOSS:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(3) A TENANT OF ANY BUILDING COVERED UNDER THIS POLICY;

"(C) WHETHER MADE BEFORE OR AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MUST RELEASE OR WAIVE THE ENTIRE RIGHT OF RECOVERY OF THE NAMED INSURED AGAINST SUCH THIRD PARTY."

Auto that provision of fire insurance by Auto was unnecessary in view of the lessee's policy issued by Liberty, Auto did not take out and maintain any fire insurance of its own on the subsequently fire-damaged building.

Based on the above evidence, the trial court found that the lessors of the subsequently fire-damaged building (originally the Mezoris), the sublessor and the sublessee (Auto), intended and understood that neither Auto nor its employees would have any liability for fire loss to the building and that the just-mentioned persons and entities would look solely to the proceeds of Liberty's policy to pay for any such loss. The trial court further found that the aforementioned release and waiver of August 6, 1974, complied in all respects with the requirements therefor of Liberty's policy. The trial court then concluded as a matter of law that Liberty had never had a right of subrogation against either defendant, but that, in any event, its claim of subrogation against Auto had been effectively released.

DISCUSSION[3]

■ A subrogation as applied to an insurer is its right to be put in the position of its insured against third parties legally responsible to its insured for the loss which the insurer has both insured and paid. (*Sacramento - Yolo Port Dist.* v. *Cargill of California, Inc.*, 4 Cal.App.3d 1004, 1010 [84 Cal.Rptr. 822].) In other words, Liberty's right to subrogation here is its right to be put in T.I.T.'s position against Auto with respect to the fire loss Liberty insured and paid. (*Gordon* v. *J. C. Penney Co.*, 7 Cal.App.3d 280, 285 [86 Cal.Rptr. 604].)

■ We turn therefore to T.I.T.'s rights against Auto in regard to this fire loss. Under the lease of the damaged building the lessee was required to take out and maintain fire insurance thereon at its own expense during the term of the lease "with loss payable to the [l]essor." This the lessee did through Liberty's policy and, as previously related, in reliance thereupon Auto did not take out any fire insurance of its own on the building in question. Moreover, as also previously indicated, under both the lease and sublease the proceeds of Liberty's policy were to be used wholly or partially to repair repairable fire damage.

---

[3]In its briefs Liberty does not seem to understand that there are two separate grounds for the trial court's decision against it. The first of these grounds was that by reason of various provisions of the lease and sublease in question and the performance of the parties thereunder, Liberty never had a right of subrogation for the fire loss (it insured and paid) against either defendant. The second ground of the trial court's decision was that, in any event, pursuant to the policy provision therefor Liberty's claim of right to subrogation was barred by the release and waiver executed by T.I.T. in favor of Auto.

It is quite obvious from these provisions that the parties to the lease and the sublease all intended that the proceeds of Liberty's fire insurance policy, maintained by the lessee at Auto's expense, were to constitute the protection of all parties to the lease documents against fire loss to the extent of the policy limits. This was the commercial expectation of these parties. Stated otherwise, under the facts of this case, we regard the subtenant, Auto, as an implied in law co-insured of T.I.T., absent an express agreement between them to the contrary. They both had insurable interests in the fire-damaged building. (See *Sutton* v. *Jondahl* (Okla.App. 1975) 532 P.2d 478, 482.)

If subrogation were permitted here, Auto, rather than the proceeds of Liberty's policy, would become the source of the funds used to repair the fire damage. This would be contrary to the just-expressed intent and expectation of T.I.T., Liberty's named insured. Under both the lease and the sublease T.I.T. did not look to Auto for payment of fire damage to the building, but instead looked only to the proceeds of Liberty's policy and not beyond.[4] The right to subrogation is governed by equitable principles (see *Meyers* v. *Bank of America etc. Assn.*, 11 Cal.2d 92, 96-97 [77 P.2d 1084]) and it would be most inequitable to hold Auto responsible for a fire loss which it thought it had completely avoided through its indirect payment over some nine years of the premiums due on Liberty's policy and had also acted in reliance upon this belief by failing to take out corresponding fire insurance of its own. It would also be a windfall for Liberty to have collected these premiums over the years for its assumption of this risk and then when the risk actually occurred, by means of this litigation, to transfer the risk wholly to Auto—the entity which paid Liberty's premiums for years to avoid this very risk.

Whenever a building is leased or subleased for business purposes, it is customary to require in the various lease and sublease documents executed between the parties that some party to the lease or sublease provide protection from fire damage to the building and a source of funds for the alleviation of that damage by obtaining and maintaining adequate fire insurance on the building. Such a provision is for the implied benefit of all persons either owning or making primary use of the building. To construe otherwise, the scope of the protection so

---

[1] We note in this connection that under both the lease and sublease neither the lessee nor the sublessee (Auto) is liable for any casualty loss to the building that is not covered by insurance. In view of these provisions, it would be highly ironic to hold, by means of subrogation, Auto liable for damage by fire to the building simply because that loss was insured against.

provided would be both unrealistic and unfair.[5] (See *New Hampshire Ins. Co.* v. *Fox Midwest Theatres, Inc.* (1969) 203 Kan. 720 [457 P.2d 133, 138, 140-141]; see also *Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc.,* 189 Cal.App.2d 613, 616, 618 [11 Cal.Rptr. 634]; *Gordon* v. *J. C. Penney Co., supra,* 7 Cal.App.3d at pp. 283-284; *Rock Springs Realty, Inc.* v. *Waid* (Mo. 1965) 392 S.W.2d 270, 277-278; *Foster Estates, Inc.* v. *Wolek* (1969) 105 N.J.Super. 339 [252 A.2d 219, 222]; 6A Appleman, Insurance Law and Practice (1975 Supp.) § 4055.)

■ As was plainly indicated in the leading case of *General Mills* v. *Goldman* (8th Cir. 1950) 184 F.2d 359, 365-366, cert. den., 340 U.S. 947 [95 L.Ed. 683, 71 S.Ct. 532], even an implied provision for fire insurance in a lease represents the agreement of the parties thereto that nonintentional loss by fire shall be paid from and only from the proceeds of the policy.[6] ■ It is true that no privity of contract or estate exists between T.I.T., the lessor, and Auto, the sublessee (see *Johnson* v. *Couch,* 189 Cal.App.2d 687, 691 [11 Cal.Rptr. 645]), but these legal circumstances have no bearing upon the existence of T.I.T.'s continuing intent and expectation with respect to the ultimate source for payment of a fire loss. We see no reason why this construction of the named insured's intent and expectation should not extend to the sublease situation before us. We also do not deem of decisive consequence the fact that both the lease and the sublease in this case lack any implied exemption of Auto from liability for fire loss to T.I.T. It is the overall intention and expectation of T.I.T. as to where it would look for compensation for fire loss that is crucial, and it is clear from what we have already said that its intention and expectation in this respect was to look only to the proceeds of Liberty's policy and neither to Auto nor to its employees. This being so, no liability to T.I.T. for this loss by fire existed on the part of Auto and therefore there was no liability on the part of Auto in favor of T.I.T. to which Liberty could be subrogated.

[5]Controversies of the kind before us could, of course, be avoided by providing in the lease and sublease that all parties to all such documents are exempted from liability for any loss insured against and then, if possible, obtaining from the insurer a waiver of its subrogation rights in favor of the parties. All parties could also be made co-insureds. (See Annot. (1967) Leases—Liability for Fire, 15 A.L.R.3d 786, 792; Commercial Real Property Lease Practice (Cont.Ed.Bar 1976) § 3.84, pp. 132-134.)

[6]In the *General Mills* case, the lease relieved the tenant (General Mills) from liability for fire loss through its provision that on termination of the lease the tenant should return the property in good condition, " 'loss by fire * * * excepted.' " (184 F.2d at p. 366.)

We turn now to the second ground of the trial court's decision against Liberty—the written release and waiver executed by T.I.T. after loss and payment therefor by Liberty in favor of Auto pursuant to specific authority therefor in Liberty's policy.[7] (See fn. 2.) Liberty challenges the validity and effectiveness of this release and waiver on several grounds. One of these is the fact that Auto was a subtenant rather than a tenant of the fire-damaged building. Another is that T.I.T. executed it not only after loss, but also after Liberty's payment of loss to Auto's knowledge.

But in case of ambiguities, insurance policies are construed against insurers. (*State Farm Mut. Auto. Ins. Co.* v. *Johnston,* 9 Cal.3d 270, 274 [107 Cal.Rptr. 149, 507 P.2d 1357].) A subtenant is but one type of tenant. (See Black's Law Dict. (rev. 4th ed. 1968) p. 1598.) Liberty's policy contains no express limitation as to the required time of execution of the authorized release and waiver in the terms now suggested by it. Accordingly, T.I.T.'s waiver and release of Auto, having been executed strictly in accordance with the applicable provisions of Liberty's policy, appears to be valid.[8]

Assuming therefore the instrument's validity, it was nonetheless totally ineffective. We have just held that, by reason of T.I.T.'s overall intention and expectation that it would look only to Liberty's policy for recovery of its fire loss and neither to Auto nor its employees, no right of recovery of such loss on the part of T.I.T. existed at any time against either Auto or

---

[7]This document, aside from the acknowledgement, reads in full:

"RELEASE AND WAIVER

Title Insurance and Trust Company, Executor of the Estate of Henry Mezori, deceased, the named insured under Liberty Mutual Fire Insurance Company's Fire Insurance Policy No. FN2-562-061049-026, and acting as such and as the Executor of the Estate of Henry Mezori, deceased, and as Trustee of the Testamentary Trust of Henry Mezori, deceased, hereby releases and waives its entire right of recovery against Auto Spring Supply Company arising out of the loss resulting to the premises located at 8527 Loch Lomond Drive, Pico Rivera, California from a fire which occurred thereat on or about May 26, 1968.
Dated: August 6, 1974.

TITLE INSURANCE AND TRUST COMPANY, INDIVIDUALLY AND IN ITS FIDUCIARY CAPACITY ABOVE SAID

By_____/s/_____
W.E. Bell, Vice President
and Trust Officer"

[8]We note that the instrument does not purport to protect the other defendant in the case, Beacham.

its employees. This being so, it had nothing in this respect to release and waive. (Cf. *Gordon* v. *J. C. Penney Co.*, *supra*, 7 Cal.App.3d at p. 285.)

The judgment is affirmed.

Allport, Acting P. J., and Potter, J., concurred.