348 So.2d 1239 (1977)
CITY OF DELAND, a Municipal Corporation, Appellant,
v.
DRI-CLIME LAMP CORP., a Foreign Corporation; Keller Kitchen Cabinets, Inc., a Florida Corporation, and Air Control Products, Inc., a Florida Corporation, Appellees.
No. Z-266.
District Court of Appeal of Florida, First District.
August 18, 1977.
William B. Wilson and Walton B. Hallowes, Jr. of Maguire, Voorhis & Wells, Orlando, Larry Sands, Daytona Beach, for appellant.
John C. Briggs and Hubert W. Williams of Robertson, Williams, Duane & Lewis, Orlando, Alfred A. Green, Jr., William E. Loucks, Daytona Beach, for appellees.
McCORD, Chief Judge.
City of Deland, appellant here, plaintiff below, appeals final judgments against appellant and in favor of appellees Dri-Clime Lamp Corporation, Keller Kitchen Cabinets, Inc., and Air Control Products, Inc., in an action brought by appellant against appellees on theories of negligence and breach of implied warranty. The suit resulted from a fire which destroyed a building leased by the City to Keller. Appellee Air Control was a guarantor of performance by Keller of its lease. The leased building was a former hangar of the Navel Air Station located outside of Deland which was conveyed by the United States Government to the City of Deland with two additions subsequently constructed by the City.
Keller used the property for the manufacture of wooden kitchen cabinets. The manufacturing process involved the staining and sealing of the cabinets with flammable material. Keller had installed a motorized wooden slat conveyor to be used in its manufacturing process, and the flammable stains and sealers tended to accumulate on the wooden slats. Keller purchased from appellee Dri-Clime Lamp Corporation three infra-red drying ovens to accelerate the drying process of the stain and sealer. These ovens were "U" shaped devices that fit over the existing conveyors. They were delivered to Keller in a subassembled state and were assembled on the site by Keller employees under the supervision of a Dri-Clime representative. The fire apparently started from an electric malfunction of these drying ovens. The building contained a sprinkler system that had been inoperative during the entire time Keller occupied *1240 the premises. Prior to the fire, the inoperative sprinkler system was discussed at a City Council meeting, but the City decided not to spend $400 per year which would be necessary to maintain the system and left it inoperative.
When the fire started, Keller employees first attempted to extinguish it used CO[2] fire extinguishers. Their efforts failed due to a fan which prevented effective use of the extinguishers. Keller employees then went to two collapsible-type water fire hoses and pulled them out approximately one foot and found no water coming out of them. The Deland Fire Department was called but was unable to effectively fight the fire. The deceased fire chief of Deland testified, by way of earlier deposition, that he had a duty to inspect the building but was never requested to do so by either the City Manager or the Airport Manager, although he did assist Keller with its firefighting procedures at Keller's request. At the close of appellant City's evidence, appellee Keller renewed a previous motion to dismiss which had been denied before trial. It was based upon appellee Keller's first affirmative defense by which it contended that under the terms of the lease, the City's only recovery for loss it suffered due to the destruction of the premises by fire would be the recovery of the insurance maintained by Keller to protect the City from such fire loss. We agree and reverse. The motion to dismiss should have been granted.
At the close of all evidence, all parties moved for directed verdicts and the motions were denied. The jury returned its verdict in favor of the City and against the defendants and assessed total damages in the amount of $150,000. It apportioned negligence of the respective parties as follows: Dri-Clime  0%; Keller and Air Control  50%; City of Deland  50%. Final judgment was entered in favor of Dri-Clime. The City had received $100,000 insurance proceeds for the fire loss from the policy maintained by Keller, as was required by Keller under the terms of the lease. The court set off in favor of Keller the $100,000 insurance proceeds against Keller's and Air Control's 50% of the total verdict and entered final judgment in favor of appellees Keller and Air Control Products. The City was thus left with a $50,000 deficit between the insurance proceeds and the total damages found by the jury.
The City contends there was no negligence on its part, and that the trial court therefore erred in not granted its motion for a directed verdict. It contends that the sole cause of the fire and its loss was negligence of appellees; that the trial court erred in setting off the proceeds of the insurance in favor of appellees Keller and Air Control. We find no error as to either contention. As stated heretofore, Keller's motion to dismiss should have been granted. Negligence should not have been an issue. The lease provided as follows:
"XVI. INSURANCE.
Tenant shall maintain insurance, during the term of this lease, with such insurers and coverages, and in such amounts as shall be approved by the Landlord, covering and insuring:
a. * * *
b. The Demised Premises against loss by fire, ... to the extent of the fair insurable value thereof, for the mutual benefit of Landlord and Tenant, and for all moneys collected from such insurance shall be used and applied toward full compliance with the obligations of the Tenant under the `Repairs Clause' of this lease or of the Landlord under the `Damages Clause' of this lease, unless this lease is cancelled by Landlord pursuant to the `Damages Clause.'"
Under the "Repairs Clause" of the lease, the tenant was required to keep the premises in a good and safe condition, and the tenant would be liable for any cost and for any damages sustained by landlord resulting from the negligence of the tenant. Under the "Damages Clause" the landlord was obligated to rebuild the premises to the extent of the insurance coverage if wholly or partially damaged or destroyed by fire.
The landlord City contends that the tenant Keller should not benefit from its own *1241 negligence by being given a set-off for the insurance proceeds. We disagree. While there does not appear to be a Florida decision on this point, the question has been ruled upon by other jurisdictions. Although there is some conflict, we consider the better view to be that taken by courts which do not allow recovery for negligence when the premises are insured pursuant to a lease or contract against loss through destruction by fire. In an early case, Newport News Shipbuilding & Dry Dock Co. v. United States, 34 F.2d 100 (4th Cir.1929), Newport had entered into a contract to repair a steamship owned by the United States, and the United States agreed to continue insurance on the vessel during the time it was in Newport's yard. The day before the repairs would have been completed, Newport's negligence caused a fire resulting in extensive damages. The court held that the insurance was for the benefit of both parties and said:
"To say that the meaning of the provision in the contract, as to insurance was that the United States was only to protect itself, and to allow recovery from the shipyard for the total of the damages, would be to place the parties in the exact situation they would have been in without any provision whatever in the contract as to insurance. Something must have been intended by the parties when the insurance provision was written in the contract."
Later, the Supreme Court of Missouri in Monsanto Chemical Co. v. American Bitumuls Co., 249 S.W.2d 428 (Mo. 1952), held to the same effect. The Supreme Court of Mississippi ruled in like effect in Fry v. Jordan Auto Company, 224 Miss. 445, 80 So.2d 53 (1955). The California appellate court in Liberty Mutual Fire Insurance Co. v. Auto Springs Supply Co., 59 Cal. App.3d 860, 131 Cal. Rptr. 211 (2 DCA 1976), ruled in like manner stating:
"It is quite obvious from these provisions that the parties to the lease and the sublease all intended that the proceeds of Liberty's fire insurance policy, maintained by the lessee at (sublessee's) expense, were to constitute the protection of all parties to the lease documents against fire loss to the extent of the policy limits. * * *
"If subrogation were permitted here, (sublessee) rather than the proceeds of Liberty's policy, would become the source of the funds used to repair the fire damage ... and it would be most inequitable to hold (sublessee) responsible for a fire loss which it thought it had completely avoided through its indirect payment over some nine years of the premiums due on Liberty's policy and had also acted in reliance upon this belief by failing to take out corresponding fire insurance of its own. It would also be a windfall for Liberty to have collected these premiums over the years for its assumption of this risk and then when the risk actually occurred, by means of this litigation, to transfer the risk wholly to (sublessee)  the entity which paid Liberty's premium for years to avoid this very risk."
See also Fred A. Chapin Lumber Co. v. Lumber Bargains, Inc., 189 Cal. App.2d 613, 11 Cal. Rptr. 634 (4th DCA 1961); Gordon v. J.C. Penney Co., 7 Cal. App.3d 280, 86 Cal. Rptr. 604 (3rd DCA 1970); Mayfair Fabrics v. Henley, 97 N.J. Super. 116, 234 A.2d 503 (1976); Koennecke v. Waxing Cedar Products, Ltd., 543 P.2d 669 (Or. 1975); Waterways Terminals v. P.S. Lord, 406 P.2d 556 (Or. 1965).
In Cerny-Pickas & Company v. C.R. Jahn Company, 7 Ill.2d 393, 131 N.E.2d 100 (1955), the lessor and insurance carrier sued the lessee for negligence which resulted in the fire loss of the lessor's building, machinery and equipment. Under the lease, the lessee was required to turn over the premises at the end of the lease "in good condition and repair (loss by fire and ordinary wear excepted.)" In ruling for the lessee, the Supreme Court of Illinois said:
"Under the construction urged by the lessor, it would be necessary for both parties to the lease to carry fire insurance if they are to be protected. The lessee would have to insure against fires due to his negligence, and the lessor against *1242 fires due to other causes... . From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire."
Under the lease in the case sub judice, it was the landlord's responsibility to determine the amount of insurance that would be necessary to insure the premises against loss by fire to the extent of the fair insurable value thereof, and it was the tenant's responsibility to pay the premiums thereon. The landlord must bear the responsibility and loss for its failure to specify an amount of insurance (on which the tenant must pay the premiums) that would cover the property to the extent of its fair insurable value. We, therefore, find no error in the trial court's entry of final judgment in favor of Keller and Air Control although such was done for a reason other than that on which we here decide the case. The City knew the purpose for which this building was to be used, and knew or should have known that such use involved a fire hazard. The fire insurance was specifically stated in the lease to be for the benefit of both parties. It was there to cover any fire loss regardless of its cause. The City failed in its obligation under the lease to see that the premises were insured against fire to the extent of their fair insurable value. It, therefore, must bear its loss resulting from such failure.
The final judgments are affirmed.
RAWLS and SMITH, JJ., concur.