Fremont-Smith, J.
This case was initiated by the Trustees of Foundry Industrial Park Trust (“Foundry”), the lessor of industrial space, against the defendant Zoltek Corporation (“Zoltek”), the lessee, to collect payments allegedly due under a commercial lease. Zoltek counterclaimed for an accounting of rent payments and defamation. That dispute has been settled, but on April 9, 1993, Lumber Mutual Insurance Company (“Lumber”), Foundry’s liability insurer, was permitted to intervene as Foundry’s subrogee with respect to an insurance claim it had paid arising out of an explosion at the leased premises, alleging that Zoltek’s negligence was the cause of the explosion.
Zoltek asserts that, under the equitable doctrine of implied co-insureds, even if Zoltek’s negligence caused the explosion, Lumber cannot recover because Zoltek is to be considered an insured party under Foundry’s insurance policy with Lumber. For the reasons discussed below, Zoltek’s motion for summary judgment is allowed.
BACKGROUND
The undisputed material facts are as follows. On November 10, 1988, Foundry and Stackpole Fibers Co., Inc. (“Stackpole”) entered into a “Standard Form Commercial Lease” for certain buildings located in Foundry’s industrial park in Lowell, Massachusetts. In November 1987, Zoltek purchased the stock of Stackpole and assumed all of Stackpole’s duties under the lease. The relevant provisions of the lease are as follows:
6. RENT ADJUSTMENT. The LESSEE shall pay to the LESSOR as additional rent hereunder when and as designated by notice in writing by LESSOR, fifty-six percent (56%) of Operating Expenses incurred during the calendar year.
“Operating Expenses” are defined for the purposes of this agreement as:... hazard and liability insurance on the whole of the premises of which the leased premises are a part. . .
10. FIRE INSURANCE. The LESSEE shall not permit any use of the leased premises which will make voidable any insurance on the property of which the leased premises are a part, or on the contents of said property . . . The LESSEE shall on demand reimburse the LESSOR, and all other tenants, all extra insurance premiums caused by the LESSEE’S use of the premises.
11. MAINTENANCE. LESSEE’S OBLIGATIONS. The LESSEE agrees to maintain the leased premises in good condition, damage by fire and other casualty only excepted . . . The LESSEE shall not permit the leased premises to be overloaded, damaged, stripped, or defaced, nor suffer any waste.
18. FIRE, CASUALTY — EMINENT DOMAIN. Should a substantial portion of the leased premises, or of the property of which they are a part, be substantially damaged by fire or other casualty, . . . the LESSOR may elect to terminate this lease. When such fire, casualty, or taking renders the leased premises substantially unsuitable for their intended use, a just and proportionate abatement of rent shall be made, and the LESSEE may elect to terminate this lease if
(a) The LESSOR fails to give written notice within thirty (30) days of intention to restore leased premises, or
(b) The LESSOR fails to restore the leased premises to a condition substantially suitable for their intended use within ninety (90) days of said fire, casualty or taking.
21. SURRENDER. The LESSEE shall at the expiration or other termination of this lease . . . deliver to the LESSOR the leased premises ... in good condition, damage by fire or other casualty only excepted .. .
A cover letter attached to the lease provides, in pertinent part, that “Stackpole shall not be required to carry property insurance on the building.” In a letter dated November 1, 1988, nine days prior to the execution of the lease, counsel for Foundry wrote or sent by facsimile, a letter responding to Stackpole’s concerns over the lease. In paragraph four of the letter, Foundry wrote that the rent calculated for “operating expenses," “is an area where some adjustment may be possible. No adjustment can be made for taxes or for fire or liability insurance . . .” In paragraph five, Foundry stated, “you [Stackpole] are not required to carry properly insurance (fire with extended coverage) on the building. You should, and I am sure you do, carry property damage insurance on your equipment furnishings and inventory. The insurance referred to in paragraph 17 of the lease is comprehensive public liability insurance.” Finally, in his deposition, the president of Zoltek, Zsolt Rumy, testified that he un *518 derstood his insurance obligations to be “public liability as well as our own equipment, no responsibility as far as the structure.” (Rumy Affidavit p. 151.)
On June 21, 1991, during the term of the lease, a pressurized tank exploded causing substantial damage to the Foundry Industrial Park. Foundry’s insurer, Lumber, pursuant to the commercial property hazard liability policy, paid Foundry’s claim for damages, and Foundry assigned all “claims against those liable for the explosion and demands” to Lumber. Lumber then brought this subrogation action alleging that the negligence of Zoltek’s agent and breach of contract caused the explosion and that therefore Zoltek was liable to Lumber for the amount of the claim paid to Foundry.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further], that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial and mandates the award of summary judgment.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
In a subrogation action, “the insurer succeeds to any right of action the insured may have against the parties allegedly responsible for the loss.” Liberty Mutual Ins. Co. v. National Consolidated Warehouses, Inc., 34 Mass.App.Ct. 293, 296 (1993). “A subrogee stands in the shoes of the subrogor in whose name the action is brought. Thus, the insurer’s rights by subrogation are no greater than the rights of the insured.” Id. at 297 (citation omitted).
Under the terms of the lease, the lessee was to pay for 56% of the lessor’s hazard and liability insurance (paragraph 6) and under paragraph 10, the lessee was to reimburse the lessor for any extra fire insurance necessitated by the lessee’s use of the premises. In both paragraph 11 and 21 the lessee was excused from repairing or surrendering the property in good condition should a fire or other casualty occur, whereas under the lease the lessor has the burden of restoring the premises to a suitable condition upon the occurrence of a fire or other casualty. (Paragraph 18.) In addition, in the cover letter accompanying the lease, the pertinent language (which has been included in the parties’ stipulated facts), states, “Stackpole Fibers Company, Inc. shall not be required to carry property insurance on the building." Furthermore, nine days before signing the lease, Zoltek was informed that it would not have to carry property insurance on the building.
Zoltek asserts that the Lumber policy issued to Foundry was clearly intended for the mutual benefit of Zoltek and Foundry, and that Zoltek is thus an implied-in-law co-insured under the Lumber policy, so that Lumber has no subrogation rights against it.
Although no Massachusetts appellate court has examined a tenant’s liability for negligence under these circumstances, in Slocum v. Natural Products Co., 292 Mass. 455, 456-57 (1935), the Supreme Judicial Court held that a surrender clause such as paragraph 21 of the lease here, which excepts the tenant from liability for damage from fire or casualty, relieved the tenant of contractual liability arising out of the accidental burning of the leased premises, while leaving open the question of whether the tenant could be liable to the landlord in tort. Id. at 457.
Other courts have held, however, that, under the doctrine of “implied co-insureds,” a tenant has the status of a co-insured with the landlord, absent an express agreement to the contrary. Safeco Ins. Cos. v. Weisbergen, 115 Idaho 428, 767 P.2d 271, 272 (1989); Liberty Mutual Fire Ins. Co. v. Auto Spring Supply Co., 59 Cal.App.3d 860, 865, 131 Cal.Rptr. 211, 214 (1976); Sutton v. Jondahl, 532 P.2d 478 (Okla. App. 1975). In Sutton, the court concluded that both the landlord and the tenant had insurable interests in the property and that the tenant who paid the fire insurance through his monthly rental as part of the operating expenses, was a co-insured. Id., at 482. The court further pointed out that tenants ordinarily rely on owners to provide fire protection, absent an express agreement to the contrary, and found that shifting the insurable risk assumed by the insurance company to a tenant, a party in privity with the landlord, would be an inequitable result considering the equitable foundation of a subrogation action. Id.
This doctrine of “implied co-insured” has been accepted by at least nine states. See e.g., Tate v. Trialco Scrap, Inc., 745 F.Supp. 458 (M.D. Tenn. 1989); Alaska Insurance Co. v. RCA Alaska Communications, Inc., 623 P.2d 1216 (Alaska 1981); Liberty Mutual Fire Insurance Co. v. Auto Spring Supply Co., 59 Cal.App.3d 860, 131 Cal.Rptr. 211 (1976); Safeco Insurance Cos. v. Weisgerber, 115 Idaho 428, 767 P.2d 271 (1989); New Hampshire Insurance Group v. Labombard, 155 Mich .App. 369, 399 N.W.2d 527 (1986); Safeco Insurance Co. v. Capri, 101 Nev. 429, 705 P.2d 659 (1985); Sutton v. Jondahl, 532 P.2d 478 (Okl. Ct. App. 1975); Fashion Place Investment, Ltd. v. Salt Lake County, 776 P.2d 941 (Utah Ct. App. 1989); Cascade Trailer Court v. Beeson, 50 Wash.App. 678, 749 P.2d 761 (1988); Rizzuto v. Morris, 22 Wash.App. 951, 592 P.2d 688 (1979); McGinnis v. C.I.E. Service Corp., v. LaShelle, 166 Ill.App.3d 137, 116 Ill. Dec. 631, 519 N.E.2d 699 (1988).
*519 Recent federal decisions have placed more emphasis on the intent of the contracting landlord and tenant than on a presumption that a tenant is a co-insured under the landlord’s policy where premiums are partly paid by the tenant. See Allstate Ins. Co. v. Gip, 797 F.Supp. 763 (N.D. Cal. 1992); Aetna Ins. Co. v. Craftwall of Idaho, Inc., 757 F.2d 1030 (9th Cir. 1985).
A third, minority approach has been articulated by the Illinois Appeals Court. In Fire Ins. Exchange v. Geekie, 128 Ill. Dec. 616, 534 N.E.2d 1061 (3d Dist. 1989) cert. denied, 127 Ill.2d 615 (1989), although the court held that, under Illinois law, a negligent tenant is responsible for damage to the leased premises, Illinois law will liberally interpret a surrender clause so that an exception to the tenant’s liability for fire damage on surrender of the premises, such as that contained in paragraph 21 of the Foundiy-Stackpole lease, will be interpreted to exculpate a tenant from liability, regardless of whether the fire was caused by the tenant’s negligence. Id.
In this regard, one leading commentator has noted:
The modern trend of authority holds that the lessor’s insurer cannot obtain subrogation against the lessee, in the absence of an express agreement or lease provision establishing a lessee’s liability, because the lessee is considered a co-insured of the lessor for the purpose of preventing subrogation; the parties are co-insureds because of the reasonable expectations they derive from their privity under the lease, their insurable interests in the property, and the commercial realties under which lessors insure leased premises and pass on the premium cost in rent and under which insurers make reimbursement for fires negligently caused by their insureds’ negligence.
6A Appleman, Insurance Law and Practice §4055, (1972), 1991 Supp. at 79, quoted in Community Credit Union v. Homelvig, 487 N.W.2d 602 (N.D. 1992).
While this court would be inclined to adopt the implied co-insured theory even absent the other indi-cia of intent discussed above, here it cannot be disputed that the parties to the lease intended Zoltek to have the benefit of the insurance. Not only was Foundry expressly required to procure fire and casualty insurance covering the building, and Zoltek required to pay for a part of the premium, but Stackpole was specifically instructed that the tenant could rely on this insurance to cover any damages to the leased premises. Because Lumber, as a subrogee, “stands in the shoes” of Foundry, and can have no greater rights than Foundry, it has no valid claim against Zoltek.
Lumber strenuously asserts that, because the intent of the parties is at issue, summary judgment is inappropriate. But to avoid summary judgment, a party must do more than generally allege an issue of material fact. The opposing party “must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment." LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Because Lumber has failed to establish the existence of a genuine issue of material fact, summary judgment is appropriate.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED.