**SENTIENCE STUDIO, LLC; et al., Plaintiffs—Appellants,**

v.

**TRAVELERS INSURANCE COMPANY, Defendant—Appellee.**

No. 03-56387.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 2004.

Decided June 21, 2004.

David E. Kronemyer, Esq., Rein Evans & Sestanovich, LLP, Los Angeles, CA, for Plaintiffs–Appellants.

Richard C. Weston, Esq., Weston & McElvain LLP, Los Angeles, CA, for Defendant–Appellee.

Before: T.G. NELSON, TASHIMA and FISHER, Circuit Judges.

## MEMORANDUM *

Sentience Studio and David E. Kronemyer (collectively the "Sentience appellants") sought a declaratory judgment that a Travelers insurance policy (the "Policy") issued to some of their corporate business partners provided coverage for their claims of stolen and damaged property. In particular, Sentience sought coverage for damages to its studio equipment, and Kronemyer sought to recover damages caused by the extirpation of his name from the credits of several independent films—most notably *My Big Fat Greek Wedding*—for which he claims to have been the executive producer. The district court

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

granted summary judgment for Travelers, finding that there was no genuine issue of material fact for trial because the policy unambiguously precluded coverage for the claims asserted.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *See United States v. City of Tacoma,* 332 F.3d 574, 578 (9th Cir.2003). We also must make an independent determination of the meaning of the relevant language of the insurance policy. *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.,* 312 F.3d 976, 981 (9th Cir.2002). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

Because the parties are familiar with the facts, they will be discussed only to the extent they are relevant to the discussion below.

## I.

A person entitled to benefits under an insurance policy—as either a named insured, additional insured or third-party beneficiary—may sue in his own name for such benefits. *Bass v. John Hancock Mut. Life Ins. Co.,* 10 Cal.3d 792, 112 Cal.Rptr. 195, 198 n. 4, 518 P.2d 1147 (1974). The Sentience appellants conceded they are not Named Insureds. We therefore must first determine, before reaching the merits, whether they are nonetheless entitled to sue Travelers directly for coverage under the Policy instead of, for instance, suing one of the Named Insureds who allegedly had responsibility for the equipment and film credits.

■ The Sentience appellants first assert that they should be considered the functional equivalent of co-insureds. The case law on which they rely does not support their claim. *See Shade Foods, Inc. v.*

*Innovative Prods. Sales & Mktg., Inc.,* 78 Cal.App.4th 847, 93 Cal.Rptr.2d 364 (Cal. Ct.App.2000); *Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co.,* 59 Cal.App.3d 860, 131 Cal.Rptr. 211 (App.1976).

In *Shade,* the court of appeal upheld a jury's determination that Shade was a third-party beneficiary of the first-party property insurance portion of the policy and thus could sue the insurer directly. *Shade,* 93 Cal.Rptr.2d at 383–84. It based its decision primarily on the fact that the processor obtained the policy at Shade's insistence, in order to cover its potential liability to Shade. *See id.*

The Sentience appellants claim that the Policy was similarly obtained at their behest, pointing to the Gold Circle entities' operating agreements. However, both agreements say only that the companies *"may"* (rather than shall) obtain insurance against any liability for which it has agreed to indemnify members or officers. Operating Agreement of Gold Circle Studios ¶ 17; Operating Agreement of Gold Circle Films ¶ 18. Moreover, these provisions are standard indemnification clauses and do not pertain to coverage for the type of property damage covered by the Policy at issue here. Therefore the Sentience appellants' reliance on *Shade* is misplaced.

They similarly claim that their relationship with the Gold Circle entities created functional co-insured status under *Liberty Mutual. Liberty Mutual* was a subrogation case in which the court considered a sublessee to be an implied-in-law co-insured under the lessee's policy. The court noted the customary nature of such insurance arrangements in the context of building leases and the normal expectations of the parties, holding that the sublessee had no liability to the lessee to which the insurer could be subrogated. 131 Cal.Rptr. at 214–15. The case is thus factually distinguishable. First, as a subrogation case,

*Liberty Mutual* involved equitable principles that are not involved here, where legal, contractual principles govern. *See Jones v. Aetna Cas. & Surety Co.*, 26 Cal.App.4th 1717, 33 Cal.Rptr.2d 291, 295 (App.1994) (refusing to apply *Liberty Mutual* and other subrogation cases to a tort claim because "[t]he doctrine of superior equities, critical to whether a right of subrogation exists, does not come into play in an action" involving contractual principles). Further, *Liberty Mutual* relied on the special context of building lease arrangements and the expectations of the parties to those arrangements in concluding that the sublessee was clearly intended to be a co-insured. That is not the nature of the parties' relationship or intent here.

The Sentience appellants finally claim to be third-party beneficiaries of the Property Coverage Form and Business Income Coverage Form. A claimant may sue the insurer as a third-party beneficiary utilizing traditional contract principles where the policy evidences direct obligations on the part of the insurer to the intended beneficiaries. *Harper v. Wausau Ins. Co.*, 56 Cal.App.4th 1079, 66 Cal.Rptr.2d 64, 68–69 (1997). Because the forms contain different terms, we address each separately.

## A. The Business Income Coverage Form

■ The Business Income Coverage Form provides for the recovery of "actual loss of Business Income ... sustained by the Insured." As explained above, the Sentience appellants are not co-insureds. Nor is there a provision in the Business Income Coverage Form indicating that the Sentience appellants or others like them were intended beneficiaries of the form. The district court therefore correctly held that the Sentience appellants cannot recover under the Business Income Coverage

Form, and we need not determine whether their claims would otherwise have been precluded.

## B. The Property Coverage Form

■ As Travelers conceded, the Property Coverage Form contains a term indicating that the parties to it intended to benefit certain third parties. *See Ascherman v. Gen. Reins. Corp.*, 183 Cal.App.3d 307, 228 Cal.Rptr. 1, 3 (1986). The term provides that the Insured's Covered Property includes:

> Personal Property of Others (including the Insured's employees) used in the Insured's business that is in the care, custody or control of the Insured or for which the Insured has agreed in writing to insure prior to any loss or damage. However, payment by [Travelers] for loss or damage to the Personal Property of Others will only be for the account of the owner of the property.

Policy, Property Coverage Form B.1.b. Because the term provides that any payment will be "for the account of" the owner, the term arguably creates a direct obligation to such third parties. Thus to the extent the Sentience appellants are entitled to coverage as "Others" whose "Personal Property" met the requirements above, they are third-party beneficiaries who are entitled to sue Travelers directly.

We therefore turn to whether the district court correctly found that the Property Coverage Form precluded coverage for the Sentience appellants' claims. The form provides that Travelers "will pay for direct physical loss or damage to Covered Property ... caused by or resulting from a Covered Cause of Loss. Covered Cause of Loss means direct physical loss unless the loss is excluded in section D., Exclusions; limited in Section E., Limitations; or excluded or limited in the Supplemental Coverage Declarations or by endorse-

ments." Because they present different issues, we will treat the claims of Kronemyer and Sentience separately.

### 1. Kronemyer's Film Credits

■ The district court assumed without deciding that Kronemyer's film credits were Covered Property given its ruling that an exclusion precluded coverage. Because we disagree with its assessment that the exclusion applies, as discussed in more detail below, we address whether the film credits are Covered Property as part of our de novo review.

The Property Coverage Form requires that there be "direct *physical* loss" of the Covered Property. This language means that the Covered Property must be tangible; "physical" loss cannot occur to the intangible. The Sentience appellants point out that the credits would have been incorporated into a tangible property—the film—and thus argue that the credits should be considered tangible property. The California courts have appeared to reject similar claims, however, and the Sentience appellants have not demonstrated why these cases are not controlling. *See Schaefer/Karpf Prods. v. CNA Ins. Co.*, 64 Cal.App.4th 1306, 76 Cal.Rptr.2d 42, 46–48 (1998); *Gulf Ins. Co. v. L.A. Effects Group, Inc.*, 827 F.2d 574, 577 (9th Cir.1987) (applying California law). Accordingly, we affirm the district court on the alternative ground that the film credits are not Covered Property under California law. *See Pritikin v. Dep't of Energy*, 254 F.3d 791, 796 (9th Cir.2001).

### 2. Sentience's Studio Equipment

■ Travelers conceded for the purposes of the motion before the district court that the studio equipment was Covered Property. We also agree with the district court that a genuine issue of material fact remains as to whether the studio equipment suffered "direct physical loss or damage."

We conclude, however, that the district court erred by granting summary judgment on the basis that the "acts or decisions" exclusion precluded coverage. This exclusion provides that Travelers will not pay for loss or damage caused by, or resulting from, "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." Policy, Property Coverage Form, Part D.3.b.

Although the exclusion states that the acts of "any person" may qualify, the Policy later provides that "[a]ny act or neglect of any person other than the Insured beyond the direction or control or the Insured will not affect this insurance." Policy, General Conditions, Part G. Thus the "acts or decisions" exclusion may apply only if the act or decision at issue was by "the Insured" or under the Insured's direction or control. For purposes of Travelers' summary judgment motion, it was undisputed that Norm Waitt intentionally seized and retained the studio equipment. Because Waitt is not a Named Insured, he must have acted under the direction or control of a Named Insured for the exclusion to apply. A genuine issue of material fact is presented as to whether Waitt so acted, or acted only on his own behalf.

Sentience argues that even if Waitt acted on behalf of a Named Insured, its claim should be covered under the Property Coverage Form because Waitt's actions were beyond its control. Where the language of an exclusion involves acts of "the insured," coverage is extended to other co-insureds who were not responsible for the act; however, when the phrase "an insured" is used, the acts of one insured means there is no coverage for *any* insured. *W. Mut. Ins. Co. v. Yamamoto*, 29 Cal.App.4th 1474, 35 Cal.Rptr.2d 698, 705

(Cal.Ct.App.1994). The Policy states that any "act or neglect of any person other than *the* Insured beyond the direction or control of *the* Insured will not affect this Insurance." Policy, General Conditions, Part G (emphasis added). Thus Travelers cannot deny coverage to innocent co-insureds based on Waitt's actions.

Although Sentience is not a co-insured, Travelers has conceded that Sentience may qualify as a third-party beneficiary for the purpose of the claim for equipment damages under the Property Coverage Form. And, to the extent a co-insured may be exempted from the "any acts" exclusion under the innocent coinsured doctrine, we see no reason why a third-party beneficiary should not be similarly exempted. *See Everglades Marina, Inc. v. Am. E. Dev. Corp.*, 374 So.2d 517, 519 (Fla.1979) (holding that third-party beneficiaries to an insurance contract could obtain coverage despite the arson of the insured). Thus the district court should not have granted summary judgment on the basis of the "acts and decisions" exclusion.

That summary judgment may not be granted to Travelers based on an exclusion targeting acts of "*the* Insured" also obviates Traveler's argument that the "[d]ishonest or criminal act by *the* Insured" exclusion applies. Even assuming that Waitt was acting under the direction or control of "the Insured," and that his act was dishonest and criminal, Sentience has created a triable issue of fact as to whether it is a third-party beneficiary and thus may be entitled to coverage despite Waitt's dishonest or criminal act.

We further conclude that a genuine issue of material fact is presented as to whether Waitt's taking of the studio equipment in the absence of any court order was a fortuitous event, as required under California law. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 377, 900 P.2d 619 (1995); *see also Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 78 (3d Cir.1989) (concluding that parties' conversion of property—due to ignoring valid court order requiring that they return the property—was a fortuitous event).

In light of our conclusions above, we need not reach the parties' other arguments.

## II.

We affirm in part and reverse in part the district court's grant of summary judgment on coverage. Specifically, and as explained above, we affirm (1) the denial of coverage as to both appellants' claims under the Business Income Coverage Form and (2) the denial of coverage as to Kronemyer's claim for the extirpation of his film credits under the Property Coverage Form. We reverse denial of coverage as to Sentience's claims for damage to its studio equipment under the Property Coverage Form and remand for further proceedings consistent with this disposition.

Each party shall bear its own costs.

AFFIRMED IN PART, REVERSED IN PART and REMANDED for further proceedings consistent with this disposition.