NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio corporation, Intervenor Below, Appellant,

v.

Henry R. KESTERSON, Individually and trading as Galaxy Limousine Service, Plaintiff Below, Appellee,

and

American Casualty Company, a corporation of the Commonwealth of Pennsylvania, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: Feb. 6, 1990.
Decided: May 11, 1990.

F. Alton Tybout (argued), Tybout, Redfearn & Pell, Wilmington, for appellant, Nationwide Mut. Ins. Co.

John G. Mulford, Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, and John R. Gerstein (argued), Barbara E. Etkind, and William D. Hopkins, Ross, Dixon & Masback, Washington, D.C., for appellee, American Cas. Co.

Before HORSEY, MOORE and WALSH, JJ.

WALSH, Justice:

Nationwide Mutual Insurance Company ("Nationwide") appeals from an order of the Superior Court granting summary judgment to American Casualty Company ("American"). The Superior Court ruled that Nationwide, which had previously been held liable to its insured for failing to settle a negligence action in which its insured was jointly liable with American's insured, could not recover that portion of the bad faith judgment that exceeded its insured's pro rata share of liability. Nationwide claims that a right to contribution arises from its subrogation to the right of its insured and from an assignment it received from its insured to any right of contribution from American's insured. Because Nationwide's liability to its insured stems not from its contractual liability, but rather from its bad faith failure to settle, we find that it has no right to contribution from a joint tortfeasor of its insured. Fur-

ther, because its insured incurred no out-of-pocket expense in satisfying more than his pro rata share of the negligence action liability and therefore has no right to contribution from his joint tortfeasor, the assignment of any such right to Nationwide is without effect. Accordingly, we affirm the judgment of the Superior Court.

I

This appeal arises from a long and complex pattern of litigation occasioned by a November 9, 1980 automobile accident. On that date, an airport limousine owned by the plaintiff below, Henry R. Kesterson ("Kesterson"), and insured by American was struck by a truck operated by John K. McNally ("McNally") and insured by Nationwide. The accident caused severe injury to a passenger in the limousine, Richard Eckman ("Eckman").

Eckman filed a negligence action against both Kesterson and McNally in Superior Court. Eckman, represented by F. Alton Tybout, Esquire ("Tybout"), offered to settle with both defendants if their insurers, Nationwide and American, each agreed to pay $100,000, the per-person limits under each policy. The offer required that both insurers settle; if either refused there would be no settlement. The settlement offer was not accepted before the deadline imposed by Tybout and the case went to trial. The jury found McNally and Kesterson negligent, assigning 65 percent fault to McNally and 35 percent to Kesterson. At a separate jury trial on the issue of damages, the jury awarded Eckman $3,225,000 (the *Eckman* judgment"). On appeal, we affirmed that judgment. *McNally v. Eckman*, Del.Supr., 466 A.2d 363 (1983).

After being found liable in the underlying personal injury suit, McNally and Kesterson, represented by Tybout,[1] brought

---

1. After this Court affirmed the *Eckman* judgment, Tybout, as attorney for Eckman, entered into an agreement with McNally and Kesterson. The agreement provided that all money recovered by McNally and Kesterson against their insurers would go to pay the *Eckman* judgment and that if Kesterson and McNally cooperated in litigation against their insurers, the judg-

ments against them would be satisfied upon the conclusion of the litigation. In exchange for this agreement, Tybout agreed to represent McNally and Kesterson in the suits against their respective insurers. Tybout was a witness in the ensuing District Court action and therefore could not act as trial counsel for McNally; how-

separate bad faith actions in Superior Court against both insurers. The *McNally* litigation was removed to the United States District Court for the District of Delaware and the Superior Court thereafter stayed the *Kesterson* case pending the outcome of the District Court case. The *McNally* jury found that Nationwide acted in bad faith in failing to accept the settlement offer made by Eckman or to interplead its policy in that action. The District Court entered judgment in favor of McNally for $4,589,-697.72 (the *"McNally* judgment"), an amount equal to the total amount of the *Eckman* judgment plus interest of 17 percent (as provided by Delaware law) that had accrued on that judgment. The judgment was affirmed on appeal. *McNally v. Nationwide Ins. Co.*, 3d Cir., 815 F.2d 254 (1987). Following the Third Circuit's affirmance, Nationwide delivered to Tybout and McNally a check payable to them in the amount of $5,244,945.17, which represented the $4,589,697.72 judgment plus interest accrued at the federal statutory rate of 7.6 percent. Acting in accordance with the agreement, McNally endorsed the check over to Eckman and Tybout. Additionally, he assigned Nationwide his interest in any claim against Kesterson arising from his payment to Eckman.[2] Nationwide agreed not to enforce the assignment against Kesterson personally.

At the time of this payment by Nationwide, the *Eckman* judgment was approximately $280,000 greater than the amount tendered to McNally and Tybout, the shortfall resulting from the difference between the Delaware statutory interest rate of 17 percent accruing on the *Eckman* judgment and the federal statutory rate of 7.6 percent accruing on the *McNally* judgment. To recover this difference, Tybout, as attorney for Kesterson and Eckman, requested that the Superior Court lift the stay in the *Kesterson* litigation. This request was granted. Tybout alleged that while American had been ready and willing to accept the Eckman settlement offer on behalf of

Kesterson, it was liable for its failure to persuade Nationwide to accept the offer on behalf of McNally.

At this point Tybout also undertook the representation of Nationwide and advised American that Nationwide was seeking contribution from American's insured, Kesterson, for the amount by which Nationwide's payment to Eckman exceeded McNally's 65 percent apportioned share of liability. Thus, Tybout argued that Kesterson's damages claim included this amount of contribution. American moved for partial summary judgment on the contribution claim, claiming that Nationwide had no right to contribution in its capacity as an assignee or subrogee of McNally, because McNally had made no out-of-pocket payment to Eckman and thus had no right to contribution. The Superior Court agreed and granted American's motion. The Court reasoned that McNally was awarded the full amount of the *Eckman* judgment in his bad faith action against Nationwide and that if he were awarded contribution from Kesterson he would receive a windfall as the result of his own tortious conduct. The assignment to Nationwide had no effect on this claim of contribution. Additionally, the Superior Court held that Nationwide's payment to McNally was not made in fulfillment of its contractual obligation but rather arose as a result of a breach of duty to its insured in failing in bad faith to settle. Because of the nature of the judgment, Nationwide was not subrogated to McNally's right of contribution from Kesterson. Therefore, Kesterson could not claim contribution as an element of damages in his bad faith action against American because McNally and Nationwide were precluded from recovering contribution from him. The court below also ruled that neither Kesterson nor American were joint tortfeasors with Nationwide in its breach of its duty to deal in good faith with its insured. Nationwide has appealed from this grant of summary judgment.

ever, he did maintain an active role in the litigation.

2. While the assignment is dated May 11, 1987, it was not delivered to Nationwide until October 17, 1988.

## II

Although the factual basis for Nationwide's claim for contribution appears complex because of the long and convoluted history of litigation from which it evolved, the legal question is fairly straightforward: Does Nationwide's asserted right to be subrogated to McNally's right of contribution against Kesterson include the right to require Kesterson's carrier to contribute to the bad faith judgment entered against Nationwide? The resolution of that question implicates principles of both joint tortfeasor contribution and subrogation.

We begin the analysis with the observation that, at the time that this litigation commenced, McNally and Kesterson, as co-defendants in Eckman's original action in the Superior Court, were joint tortfeasors whose relationship was governed by the Delaware Uniform Contribution Among Tort-feasors Law (the "Law"), 10 *Del.C.* Ch. 63. The relationship sprang from the claim of common liability asserted by Eckman against them. *Fields v. Synthetic Ropes, Inc.*, Del.Supr., 215 A.2d 427 (1965). Their respective contribution responsibilities remained inchoate, however, until a joint tortfeasor had "discharged the common liability or [had] paid more than his pro rata share thereof." 10 *Del.C.* § 6302(b). *Fehlhaber v. Indian Trails, Inc.*, D.Del. 45 F.R.D. 285 (1968), *aff'd*, 3d Cir. 425 F.2d 715 (1970). Nationwide concedes that McNally, who paid nothing to Eckman, is not entitled to seek contribution in his own right because such a recovery would amount to a windfall to a tortfeasor. It is argued, however, that because McNally has a "technically valid right" under the Law, such a right is assignable to any party who paid money in satisfaction of the underlying judgment. Thus, Nationwide, as McNally's subrogree, views its claim against Kesterson (and, ultimately, his insurer, American) as "flawless."

■ Contrary to its assertion, we view Nationwide's claim to be fatally flawed under established principles of subrogation law. Unless controlled by statute, the right of subrogation is governed by principles of equity from which it evolved. 4 S.

Symons, *Pomeroy's Equity Jurisprudence* § 1419 (5th ed. 1941). The equitable concept of reimbursement for one who pays the debt of another, which forms the basis for subrogation, requires, however, that the underlying payment must have been the obligation of the original obligor, who has become a subrogee. *Baio v. Commercial Union Ins. Co.*, Del.Supr., 410 A.2d 502 (1979). To be sure, Nationwide's asserted subrogation status arose from a payment it made in satisfaction of a judgment against the original tortfeasors (McNally and Kesterson), but the payment was made as a result of the federal action which resulted in a judgment against Nationwide directly. That judgment, in turn, stemmed from Nationwide's own bad faith actions in its handling of the Eckman settlement demand. Thus, not only did the Nationwide payment not arise from a common liability which Nationwide or its insured shared with Kesterson, but the payment is attributable to Nationwide's own wrongdoing, as judicially determined, vis-a-vis its own insured. In short, Nationwide paid a judgment in excess of $5 million to satisfy a primary claim against it for bad faith, not a secondary obligation arising out of McNally's bad conduct. The mere fact that the bad faith claim had its genesis in a tort action based on joint liability does not change the nature of that payment.

The Superior Court's rejection of Nationwide's asserted subrogation claim is supported by the holding in *Commercial Union Insurance Co. v. Ford Motor Co.*, N.D. Cal., 599 F.Supp. 1271 (1984), in which a liability carrier was denied contribution from an original tortfeasor for payment of a bad faith claim in excess of policy limits. Nationwide attempts to distinguish the holding in *Commercial Union* by arguing that the party from whom contribution was sought in that case bore no responsibility for the failure to settle the original claim, while here, American was a party to the rejection of Eckman's settlement offer. This distinction is not persuasive. While American's participation in the aborted settlement negotiations in the Eckman claim might be pertinent to assessing relative

degrees of fault in a joint tortfeasor dispute, the focus here is upon the availability of subrogation. The holding in *Commercial Union* is clear in denying subrogation status to a party who had discharged its own obligation. The logic of that case controls here and precludes recovery by Nationwide for breach of its own duty.

The judgment of the Superior Court is AFFIRMED.