**LEXINGTON INSURANCE CO., as Subrogee to the Rights of Apartment Communities Corp., Inc., Plaintiff,**

v.

**Brian RABOIN, George Dougherty, Shell Electric Manufacturing (Holdings) Co., Ltd., SMC Electric Manufacturing Corp., Defendants.**

**No. 95C–04–195 SCD.**

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 25, 1997.

Decided: Feb. 9, 1998.

---

23. *Id.* at 309.

Jan R. Jurden, of Young, Conaway, Stargatt & Taylor, Wilmington, Donald A. Waltz, of Cozen & O'Connor, Philadelphia, Pennsylvania, for plaintiff Lexington Insurance Co.

Robert K. Pearce, of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, for defendant Brian Raboin.

Francis J. Jones, Jr., Nancy R. Walsh, of Morris, James Hitchens & Williams, Wilmington, for defendant George Dougherty.

John D. Balaguer, of White & Williams, Wilmington, for defendants Shell Electric Manufacturing (Holdings) Co., Ltd. and SMC Marketing Corp.

## OPINION

Del PESCO, Judge.

### Introduction

The issue before the Court concerns whether, pursuant to the terms of a lease agreement, a residential tenant is a "co-insured" under the landlord's general fire insurance policy for the limited purpose of shielding the tenant from a subrogation action by the landlord's carrier in an instance where the tenant's alleged negligent conduct caused a fire loss. I conclude that for purposes of preventing subrogation landlords and residential tenants are co-insureds, absent some clearly expressed intent in the lease to the contrary.

### Factual and Procedural Background

On August 5, 1993, a fire occurred at the Towne Court Apartments ("Landlord") in Newark, Delaware. Lexington Insurance Company ("Lexington") alleges that the fire originated in the apartment occupied by Brian Raboin and two other students attending the University of Delaware. George Dough-

erty, who had shared the apartment with the others, left in May 1993 upon his graduation from the university. According to Lexington, the fire started in the wiring of a ceiling fan that had been installed in the apartment by Raboin with Dougherty's assistance. The ceiling fan was installed apparently in violation of the landlord's rules and regulations, which obligated the tenants "not to make any alterations, improvements or additions to the rental unit or to the building of which the rental unit is a part without the prior written consent of the owner." Previously, this same fan had been installed in another rental unit at Towne Court where Raboin lived before moving into the apartment. It is a matter of dispute whether Raboin received permission to install the fan in the other rental unit, but there are no facts indicating that the landlord gave Raboin or Dougherty written permission to install the fan in their apartment.

Under the terms of its policy, Lexington paid out $710,000 for fire damage to the apartment building. It seeks to subrogate its loss by bringing an action for negligence against Raboin and Dougherty and for products liability against the manufacturers of the ceiling fan. In their motion for summary judgment, Raboin and Dougherty contend that they are impliedly co-insureds under the terms of their lease and, therefore, shielded from Lexington's subrogation claim.

Summary judgment is appropriate where the moving party shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[1] The Court accepts as established all undisputed factual assertions made by either party, and accepts the nonmovant's version of any disputed facts.[2] All rational inferences which favor the nonmoving party are drawn from those accepted facts.[3]

### The Lease

The relevant provisions of the lease state:[4]

. . .

### 8. NO LIABILITY FOR LOSS OR DAMAGE TO RESIDENT'S PERSON OR PROPERTY: INDEMNITY TO OWNER.

Resident agrees to be solely responsible for all loss [or] damage to Resident's person or property or to the property of any other person which may be situate in the rental unit during the term of this rental agreement or any renewal or extension thereof, including any loss of fire or theft in and about the rental unit and storage area, negligence of Owner, its servants, agents, or employees excepted and resident agrees to procure content and liability insurance to afford protection to himself against risks herein assumed. In addition, Resident agrees to indemnify and save Owner harmless from any and all loss occasioned by Resident's breach of the covenants, terms and conditions of this general agreement or caused by his family, guests, visitors, agents or employees. Resident is required to furnish insurance coverage on all personal property within the leased premises and public areas of this community, at the expense of the Resident. Insurance coverage must also include liability of an adequate amount.

. . .

### 12. SURRENDER OF THE RENTAL UNIT

On the last day or sooner termination of this rental agreement, Resident shall surrender the rental unit in good condition and repair (reasonable wear and tear and damage by acts of God or fire excepted). . . .

. . .

### 16. OWNER'S RULES AND REGULATIONS

Resident agrees to abide by the Rules and Regulations of Owner concerning the use, occupation and maintenance of the rental unit attached hereto and made a

---

1. Super.Ct.Civ.R. 56(c).

2. *Merrill v. Crothall–American, Inc,* Del.Supr., 606 A.2d 96, 99–100 (1992).

3. *Id.*

4. The original lease obtained by the parties through discovery is very difficult to read. In interpreting the document, the Court relies on its own reading of the original and on a transcription provided by defendants Raboin and Dougherty.

part hereof as Exhibit "A", ... If by reason of failure of Resident to comply with any of the provisions of such Rules and Regulations, the Owner shall suffer or incur any expense of any increase in insurance premiums[,] Resident shall, in addition to promptly correcting such non-compliance, forthwith reimburse and pay, as additional rent, to Owner such expense and such increased premiums.. It is further understood that Resident's failure to comply with any such Rule or Regulation shall entitle Owner to terminate this rental agreement.

...

EXHIBIT "A" OWNER'S RULES AND REGULATIONS ...:

Resident agrees that Resident, members of his family, his guests, agents, servants or licensees shall:

...

(10) Not bring anything to or keep anything in the rental unit or the building of which the rental unit is a part, or commit or suffer to be committed any act objectionable to the fire or other hazard insurance companies whereby the fire or hazard insurance on the rental unit or any part thereof or on the building of which the rental unit is a part shall become void, suspended or rated as a more hazardous risk than at the [date] of the execution of this rental agreement.

(11) Not make any alterations, improvements or additions to the rental unit or to the building of which the rental unit is a part without the prior written consent of the Owner, ...

 In determining the meaning of the lease, the Court must look at the whole document and not interpret particular provisions in isolation.[5] Where the meaning of the terms of the lease are clear, such terms will be given their common and ordinary meaning.[6] Any ambiguity in the terms of the lease will be strictly construed against the lessor.[7] The function of a court in interpreting a lease is to ascertain and give effect to the mutual intention of the parties as manifested by its terms.[8]

The lease agreement in question clearly contemplates a division of risks between landlord and tenant. The tenant is expressly required to carry insurance coverage against loss to the tenant's person or property located within the rental unit or common areas and agrees to indemnify the landlord against any claim of loss by the tenant. The tenant is further enjoined from doing anything that would cause the landlord's fire or hazard insurance to become void, suspended, or rated as more hazardous. If the landlord should suffer an increased premium for this coverage, the tenant is obliged to pay the additional expense. There is no indication that the tenant is responsible for or required to provide fire insurance for the landlord's realty.

Taken as a whole, the implication of these provisions is that the landlord will carry general fire and hazard insurance for the protection of the building and property not owned by or personal to the tenant. This implication is supported by the lease's surrender provisions which require the tenants to return the rental unit in good condition and repair, reasonable wear and tear and damage by acts of God or fire excepted. In such a context, the landlord has assumed the risk of fire to the realty, while the tenants have assumed the risk to person and property. The respective benefits confirm such an allocation of risk. Each party undertakes to protect its own property to the mutual benefit of the other, that is, by not expecting the other to bear the liability or cost of carrying duplicative coverage. The remaining question is whether the tenant is also an implied co-insured under the landlord's fire policy for

**5.** *Grissom v. Nationwide Mut. Ins. Co.*, Del.Ch., 599 A.2d 1086, 1088 (1991); *Roffman v. Wilmington Housing Auth.*, Del.Supr., 179 A.2d 99, 102 (1962) (in construing a lease the court must give effect, if possible, to all of its terms).

**6.** *Schwartzman v. Weiner*, Del.Super., 319 A.2d 48, 51–52 (1974).

**7.** *Paul v. Paul's Liquor Store Co.*, Del.Supr., 217 A.2d 197, 199 (1966).

**8.** *Schwartzman*, 319 A.2d at 51–52.

purposes of a subrogation by the owner's carrier against the tenant.

## Subrogation

■ An insurer who pays a loss suffered by the insured is entitled to be subrogated *pro tanto* to any right of action which the insured may have against a third person whose tort caused the loss.[9] Subrogation is controlled by the principles of equity.[10] No right of subrogation exists, however, against the insured,[11] co-insured,[12] or where the wrongdoer is an insured under the same policy.[13]

■ Lexington argues that unless the lease contains specific and clear exculpatory language which purports to waive the subrogation rights of the carrier, the tenants are liable for negligent conduct which results in a loss to the carrier. Lexington cites *Tandy Corp. v. Fusco Properties*[14] for the dual propositions that clauses in a lease which seek to exonerate a party from the consequences of its own negligence are looked on with disfavor[15] and that a party which seeks to shield itself from liability for its own negligence must do so by clear and specific language.[16]

Lexington's reliance upon *Tandy*, however, is misplaced for two reasons. First, as a predicate to its holding, the *Tandy* court noted that the dispute revolved around a commercial lease between two sophisticated parties of equal bargaining power who negotiated an arms-length transaction. The instant case concerns a residential lease in which the landlord assumed the dominant position in the relationship, drafted the lease, and determined all of its terms and conditions. Second, and more importantly, the fundamental issue in this case is not whether there exists an exculpatory clause in the lease agreement excusing the tenant's liability as discussed in *Tandy*. Rather, the issue is whether the lease's implied allocation of risk of fire to the landlord establishes the tenant a co-insured under the landlord's policy, thus preventing subrogation against the tenant.

## Negligent Tenant's Liability to Landlord's Insurers

The trend of modern jurisprudence holds that fire insurance secured by the landlord has been obtained for the mutual benefit of landlord and lessee.[17] A clear majority of

9. *Frank C. Sparks Co. v. Huber Baking Co.,* Del. Supr., 96 A.2d 456, 462 (1953); see also 44 AM.JUR.2D § 1794.

10. *Nationwide Mut. Ins. Co. v. Kesterson,* Del. Supr., 575 A.2d 1127, 1128 (1990); 44 AM.JUR.2D § 1794; 4 S. SYMONS, POMEROY'S EQUITY JURISPRUDENCE 1419 (5th ed.).

11. *See, e.g.,* 16 COUCH ON INSURANCE 2d § 61:133.

12. *See, e.g., Board of Educ. v. Hales,* Utah Supr., 566 P.2d 1246, 1247 (1977); *Stafford Metal Works, Inc. v. Cook Paint and Varnish Co.,* D.N.D.Tex., 418 F.Supp. 56, n. 2 (1976); 44 AM JUR .2D § 1830; 6A APPLEMAN, INSURANCE LAW AND PRACTICE § 4055.

13. *Hoechst Celanese Corp. v. National Union Fire Ins. Co.,* Del.Super., C.A. No. 89C–SE–035, Gebelein, J., 1994 WL 721614 (Apr. 8, 1994) (Mem. Op. at 4); 44 AM.JUR.2D § 1794.

14. *Tandy Corp. v. Fusco Properties,* Del.Super., C.A. No. 95C–03–085, 1996 WL 280774, Herlihy, J. (Apr. 10, 1996) (Mem.Op. at *3).

15. *Id.* (citing *Blum v. Kauffman,* Del.Supr., 297 A.2d 48, 49 (1972)).

16. *Id.* (citing *Paoli v. Dave Hall, Inc.,* Del.Super., 462 A.2d 1094, 1098 (1983)).

17. *See, e.g., Tate v. Trialco Scrap, Inc.,* M.D.Tenn., 745 F.Supp. 458, 474 (1989), *aff'd,* 908 F.2d 974 (1990); *Alaska Ins. Co. v. RCA Alaska Communications, Inc.,* Alaska Supr., 623 P.2d 1216 (1981); *Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co.,* 59 Cal.App.3d 860, 131 Cal.Rptr. 211, 214–15 (1976); *Great Am. Ins. Co. v. Cahill,* Conn.Super., 1997 WL 375099, Sullivan, J. (June 24, 1997); *Dix Mut. Ins. Co. v. LaFramboise,* 149 Ill.2d 314, 173 Ill.Dec. 648, 597 N.E.2d 622, 624–26 (1992); *Diocese of Covington v. Christian Appalachian Project,* Ky.App., 787 S.W.2d 704, 704–05 (1990); *Lexington Ins. Co. v. All Regions Chemical Labs, Inc.,* 419 Mass. 712, 647 N.E.2d 399, 400 (1995); *New Hampshire Ins. Group v. Labombard,* 155 Mich.App. 369, 399 N.W.2d 527, 530–31, *appeal denied,* 428 Mich. 911 (1986); *United Fire & Cas. Co. v. Bruggeman,* Minn.App., 505 N.W.2d 87, 88–89 (1993); *Rock Springs Realty, Inc. v. Waid,* Mo. Supr., 392 S.W.2d 270, 278 (1965); *Safeco Ins. Co. v. Capri,* 101 Nev. 429, 705 P.2d 659, 660 (1985); *Community Credit Union of New Rockford v. Homelvig,* N.D.Supr., 487 N.W.2d 602, 603–05 (1992); *United States Fire Ins. Co. v. Phil–Mar Corp.,* 166 Ohio St. 85, 139 N.E.2d 330, 333 (1956); *Sutton v. Jondahl,* Okla.App., 532 P.2d 478, 482 (1975); *Fashion Place Investment, Ltd. v. Salt Lake County,* Utah App., 776 P.2d 941, 945, *cert. denied,* 783 P.2d 53 (1989); *Monterey Corp. v. Hart,* 216 Va. 843, 224 S.E.2d 142,

courts regard the parties as co-insured,[18] as a matter of law, because the reasonable expectations they derive from their privity under the lease, their respective insurable interests in the property (the landlord's interest in fee and the tenant's possessory interest), the commercial realities under which landlords insure the leased premises and pass on the premium cost in rent, the recognition that most fires are caused by negligent conduct, and the requirement that insurers reimburse for fires caused by their insured's negligence.[19] Thus, in the absence of an express agreement or provision in the lease that would place liability on the tenant for the tenant's negligence in causing the fire, the landlord's carrier cannot obtain subrogation against the tenant. A leading case, *Sutton v. Jondahl,* states the practical basis for this position:

> [T]he premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.
>
> The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment ... renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it

would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there were such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself....

> Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established require that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant.[20]

■ It should be noted that the modern trend is not universally accepted. A number of courts have arrived at an opposite position: that a lease should be strictly construed, that the tenant who has caused damage to the premises should not escape the common-law consequences of the tenant's own negligence, and that, absent an agreement to the contrary, the tenant may be subject to subrogation by the landlord's carrier.[21] I adopt the majority position: for purposes of preventing subrogation, residential tenants are co-insureds, absent some clearly expressed intent in the lease to the contrary. Such a position more equitably squares with the reality of the landlord's generally dominant relationship over the residential tenant, the typical expectations of the parties with regard to the assignment of risk of loss for fire, the practical effect that rental payments contribute to the cost of the landlord's fire insurance premiums, the mutual benefits derived by the parties from dividing respective liabilities, and the efficiency of not carrying duplicative insurance coverage on the same property.

147 (1976); *Cascade Trailer Court v. Beeson,* 50 Wash.App. 678, 749 P.2d 761, 766 (1988). *See generally* 49 Am.Jur.2d § 481; 6A Appleman, Insurance Law & Practice § 4055 (supp.1997).

**18.** Although today's decision is limited to a residential lease, other majority jurisdictions find the tenant a co-insured whether the tenancy is commercial or residential.

**19.** *RCA Alaska Communications,* 623 P.2d at 1219–20; *Cahill,* 1997 WL 375099 at *2; *Safeco,* 767 P.2d at 272–73; *Sutton,* 532 P.2d at 482. *See generally* 49 Am.Jur.2d § 481.

**20.** *Sutton,* 532 P.2d at 482.

**21.** *See, e.g., Page v. Scott,* 263 Ark. 684, 567 S.W.2d 101, 104 (1978); *Fire Ins. Exchange v. Geekie,* 179 Ill.App.3d 679, 128 Ill.Dec. 616, 534 N.E.2d 1061, *cert. denied,* 127 Ill.2d 615, 136 Ill.Dec. 585, 545 N.E.2d 109 (1989); *Neubauer v. Hostetter,* Iowa Supr., 485 N.W.2d 87, 89–90 (1992); *Britton v. Wooten,* Ky.Supr., 817 S.W.2d 443, 446–47 (1991); *Zoppi v. Traurig,* 251 N.J.Super. 283, 598 A.2d 19, 21 (1990); *cf. Bannock Building Co. v. Sahlberg,* 126 Idaho 545, 887 P.2d 1052, 1056 (1994) (expectations of the parties as to who should bear the risk of loss of fire is the determinative factor in deciding whether tenant is a co-insured).

Applying these principles to the instant case, the Court finds that for purposes of subrogation Raboin and Dougherty are co-insureds under the landlord's fire insurance policy with Lexington. There is no express language in the lease providing for the tenants' liability in the event that the tenants negligently cause a fire to the rental property. As previously discussed, the terms of the lease imply that the tenants are liable for loss to person and personal property while the landlord is liable for loss from fire to the dwelling. This implied allocation of risk, moreover, is intended for the mutual benefit of the parties.

## Conclusion

As co-insureds, the tenants are shielded from the subrogation action brought by Lexington. Therefore, defendants Raboin and Dougherty's motion for summary judgment is **GRANTED.**