SUPERIOR COURT
OF THE
STATE OF DELAWARE

**ROBERT H. ROBINSON, JR.**
**JUDGE**

**Sussex County Courthouse**
**1 The Circle, Suite 2**
**Georgetown, DE 19947**
**Telephone: (302) 856-5264**

Submitted: June 15, 2022
Decided: September 15, 2022

Robert C. McDonald, Esquire
Jeffrey S. Friedman, Esquire
Silverman, McDonald & Friedman
1010 North Bancroft Parkway, Ste. 22
Wilmington, Delaware 19805
Attorneys for Plaintiff

Mark H. Riesenfeld, Esquire
Smith & Cohen Law Group
1528 Walnut Street, Suite 400
Philadelphia, Pennsylvania 19102
Attorneys *pro hac vice* for Plaintiff

Marissa D. White, Esquire
Wade A. Adams, III, Esquire
Law Offices of Wade A. Adams, III
Christiana Executive Campus
111 Continental Drive, Suite 309
Newark, Delaware 19713
Attorneys for Defendants

Re: *Donegal Insurance Group v. Sathiyaselvam Thangavel and Sasikala Muthusamy*
C.A. No.: S21C-08-013 RHR

Dear Counsel:

Defendants Sathiyaselvam Thangavel and Sasikala Muthusamy (collectively "Defendants") were lessees of an apartment owned and managed by Seaford Apartment Ventures, LLC ("Seaford Apartments"). On December 28, 2019, a fire suppression sprinkler was activated in Defendants' apartment—allegedly after a drone aircraft they were operating inside the apartment damaged the sprinkler—that

caused extensive water damage. Seaford Apartments filed a claim with its insurance company, Donegal Insurance Group ("Donegal" or "Plaintiff"), which paid $77,704.06 to repair the damage. Donegal filed this complaint, as subrogee of Seaford Apartments, against Defendants, seeking to recover the cost of the repairs. Defendants have moved for summary judgment. For the following reasons, the motion for summary judgment is GRANTED.

A. The Parties' Contentions

Defendants argue that they are entitled to summary judgment under the Delaware Superior Court's holding in *Lexington Insurance Company v. Raboin*,[1] which adopted the reasoning of *Sutton v. Jondahl*.[2] *Sutton* and *Lexington* hold that insurance obtained by a landlord is for the mutual benefit of the landlord and tenant, and that therefore the parties should be considered co-insureds. Unless there is an express agreement or provision in the lease that would place liability on the tenant, the landlord's insurance carrier cannot obtain subrogation against the tenant (commonly referred to as the "*Sutton* Rule.")[3]

Plaintiff contends that the *Sutton* Rule does not apply to the present case. Plaintiff argues that the lease between the Defendants and Seaford Apartments (the "Lease") constitutes an express agreement between Seaford Apartments and

---

[1] 712 A.2d 1011 (Del. Super. Ct. 1998).
[2] 532 P.2d 478 (Okla. Civ. App. 1975).
[3] *Deloach v. Houser,* 2018 WL 5899080, at *2 (Del. Super. Ct. Nov. 9, 2018).

Defendants that makes Defendants liable under the Lease. Plaintiff cites to the following provision:

> 12. NO LIABILITY FOR LOSS OR DAMAGE TO TENANTS' PERSONS OR PROPERTY; INDEMNITY TO LANDLORD.
> (a) Tenants agree to be solely responsible for all loss or damages to Tenants or their property or to any other person which may be situated in the Rental Unit and storage area; gross negligence of Landlord, its servant, agents or employees excepted; In addition, Tenants agree to indemnify and save Landlord harmless from any and all loss occasioned by the tenant's breach of any of the covenants, terms and conditions of the Agreement, or caused by the tenant(s) family, guests, visitors, agents or employees. See § 5309.
> (b) Tenant agrees to procure and maintain adequate content and liability insurance in an amount not less than $300,000.00 to afford protection against the risks herein assumed….[4]

The Court requested further argument from the parties as to their interpretation of another provision in the Lease:

> 29. TENANT RESPONSIBLE FOR DAMAGES.
> Tenant by accepting this agreement covenants and agrees that tenant will be responsible for all damages accidentally, maliciously, intentionally, or negligently caused by the tenant, tenant's family, guests or invitees to any of the property of the landlord.[5]

Plaintiff argues this provision further supports its position. Finally, Plaintiff argues that, at the very least, the Lease's language creates ambiguity and a question of fact that precludes the entry of summary judgment.

---

[4] Defs.' Mot. Summ. J. Ex. A (the "Lease").
[5] *Id*.

3

B. Standard of Review

Summary judgment may be granted only if, when viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of fact and the moving party is entitled to relief as a matter of law.[6] When considering a motion for summary judgment, the Court's role is to examine the record to determine whether genuine issues of material fact exist "but not to decide such issues."[7] This Court "will accept as established all undisputed factual assertions, made by either party, and accept the non-movant's version of any disputed facts."[8] "The proper construction of any contract … is purely a question of law."[9] Delaware courts adhere "to an objective theory of contracts, the contract's construction should be that which would be understood by an objective, reasonable third party."[10] Summary judgment is appropriate in contract disputes where the language at issue is clear and unambiguous and not subject to multiple interpretations.[11] Ambiguity exists only if the disputed language is "fairly or reasonably susceptible to more than one

---

[6] *Moore v. Sizemore*, 405 A.2d 679 (Del. 1979); Super. Ct. Civ. R. 56.
[7] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).
[8] *Id.*
[9] *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).
[10] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 696 (Del. 2019); *see also GMG Cap. Inv., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 780 (Del. 2012) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language").
[11] *GMG Cap. Inv., LLC*, 36 A.3d at 783.

meaning."[12] The Court's function in construing a lease is to ascertain and give effect to the mutual intention of the parties as manifested by its terms.[13] As with all contracts, this Court should give effect to all of its provisions if possible.[14]

C. Discussion

I find that the language in Paragraphs 12 and 29 of the Lease is substantially the same as the language of the leases considered in *Lexington,*[15] *Deloach v. Houser,*[16] and *State Farm Fire & Casualty Company v. Lambert.*[17] In each of these cases, the trial court rejected the insurer's argument that the lease contained an express agreement placing liability for damage on the tenant and found that the *Sutton* Rule controls.

In the present matter, the Lease must be considered in its entirety and particular provisions should not be considered in isolation. As in *Lexington*, the

---

[12] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).

[13] *Schwartzman v. Weiner*, 319 A.2d 48, 51–52 (Del. Super. Ct. 1974).

[14] *Roffman v. Wilm. Hous. Auth.*, 179 A.2d 99, 102 (Del. 1962).

[15] The court quoted the lease as follows: "Resident agrees to indemnify and save Owner harmless from any and all loss occasioned by Resident's breach of the covenants, terms and conditions of this general agreement or caused by his family, guests, visitors, agents or employees. Resident is required to furnish insurance coverage on all personal property within the leased premises and public areas of this community, at the expense of the Resident." 712 A.2d 1011, 1013 (Del. Super. Ct. 1998).

[16] "To distinguish the *Lexington* holding, [Plaintiff] directs the Court to various lease provisions concerning the tenant's obligation to return the property in good condition, to pay for damages in excess of normal wear and tear, and to pay for any damages to the landlord's property caused by the tenant or his relatives or guests." 2018 WL 5899080, at *1 (Del. Super. Ct. Nov. 9, 2018).

[17] The court noted the following language in the lease: "[T]he tenant will be responsible for damages to the unit and premises, other than normal wear and tear" and "repair of tenant-caused damages must be completed by the owner at the expense of the tenant." 2017 WL 5593784, at *3 (D. Del. Nov. 21, 2017).

5

Lease contemplates an allocation of risk between the landlord and tenant. The Lease requires the tenant to pay a security deposit and to obtain and maintain insurance for personal property and liability of at least $300,000.00. In *Lexington*, the Superior Court expressly addressed whether a tenant is an implied co-insured under the landlord's fire insurance policy for purposes of a subrogation action by the landlord's insurance carrier against a residential tenant.[18] The Superior Court determined that, absent some clearly expressed intent in the lease to the contrary, tenants are considered co-insureds for the purposes of preventing subrogation *even where* the tenant's alleged negligent conduct caused the loss.[19] There is no ambiguity in the language of the Lease.

I note that the important policy considerations underlying the *Sutton* Rule apply in the present case. For example, the *Lexington* decision referenced the landlord's "generally dominant relationship over the residential tenant, the typical assignment of risk of loss for fire, the practical effect that rental payments contribute to the cost of the landlord's fire insurance premiums, the mutual benefits derived by the parties from dividing respective liabilities, and the efficiency of not carrying duplicative insurance coverage on the same property."[20] Here, the possible damage caused by fire and water are similar in nature, such that the *Sutton* Rule can be

---

[18] 712 A.2d at 1014.
[19] *Id.* at 1017. *See also Deloach*, 2018 WL 5899080, at *1.
[20] 712 A.2d at 1016.

extended to water damage. Those policy considerations are echoed in *Deloach*, where the Superior Court noted the following important policy considerations: "each tenant cannot reasonably be expected to purchase their own insurance for damage to a multi-million dollar apartment complex, the tenant's only insurable interest being in his own apartment, and landlords are better able to insure the whole premises and pass the cost of such insurance on to all tenants in rent."[21]

I find the language of the Lease in the present case is substantially similar to the language of the leases in *Lexington*, *Deloach*, and *Lambert*, and that the *Sutton* Rule applies. Plaintiffs have not cited—and cannot cite—to language in the Lease that differentiates this Lease from the leases in similar Delaware cases. Therefore, Defendants' Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

Sincerely,

Robert H. Robinson, Jr.
Judge

---

[21] 2018 WL 5899080, at *1.