# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GUIDEONE NATIONAL a/s/o )
SOVEREIGN PROPERTY )
MANAGEMENT, LLC, )
)
          Plaintiff, )
)
          v. ) C.A. No. N21C-06-006 CEB
)
MARY ALBERT, )
)
          Defendant. )

Submitted: November 28, 2022
Decided: January 27, 2023

## MEMORANDUM OPINION

*Upon Consideration of Defendant Mary Albert's Motion for Summary Judgment,*
**GRANTED.**

Lisa C. McLaughlin, Esquire, and Todd L. Goodman, Esquire, PHILLIPS, MCLAUGHLIN & HALL, P.A., Wilmington, Delaware. *Attorneys for Plaintiff GuideOne National a/s/o Sovereign Property Management, LLC.*

Brian Thomas McNelis, Esquire, YOUNG & MCNELIS, Dover, Delaware. *Attorney for Defendant Mary Albert.*

**BUTLER, R.J.**

The Complaint alleges there was a fire at the Baytree Apartments ("Baytree") in Dover, Delaware that caused about $4 million in damage to twenty-four apartment units. Plaintiff was the insurer for the owner of the complex. Plaintiff paid out under the insurance policy and has sued Defendant, the resident of the apartment unit where the fire originated. Plaintiff seeks recompense from Defendant for the payout. Defendant has filed for summary judgment, arguing Plaintiff's complaint is barred because she is co-insured under the property owner's fire policy. The Court agrees and therefore Defendant's motion for summary judgment will be granted.

## BACKGROUND

### A. The Parties

Defendant Mary Albert was a tenant of Baytree when the fire occurred.[1] GuideOne is an insurance company.[2] At the time of the fire, GuideOne was the insurer for the property owner, Sovereign Property Management, LLC ("Sovereign").[3] GuideOne sued Ms. Albert as subrogee of its insured.

### B. The Fire

In April 2020, a fire allegedly began on the balcony of Ms. Albert's apartment when her guest failed to properly extinguish a discarded cigarette.[4] The fire caused

---

[1] Compl. ¶¶ 7, 9–10, D.I. 1 [hereinafter "Compl."].
[2] *Id.* ¶ 1.
[3] *Id.* ¶¶ 3–4.
[4] *Id.* ¶¶ 9–10.

1

damage to twenty-four apartment units.[5]  As a result, two buildings in the Baytree complex were condemned and required a full demolition and comprehensive rebuild.[6]  As a result of the damage, GuideOne has or will make payments to Sovereign in the amount of approximately $4 million.[7]

## D.  The Parties Contentions

Ms. Albert has moved for summary judgment, claiming that GuideOne's complaint is barred by the *Sutton* Rule,[8] adopted by our courts in *Lexington Insurance Company v. Raboin*.[9]  The *Sutton* Rule holds that tenants are "co-insured" with the landlord under the landlord's fire insurance policy.[10]  Because the insurer cannot obtain subrogation from its own insured, subrogation is barred against the tenant.[11]  GuideOne argues that the *Sutton* Rule is merely a presumption and specific provisions in the lease between Ms. Albert and Sovereign warrant exclusion from the *Sutton* Rule.  Rather, GuideOne asks the Court to find this case more like the holding in *Deardorff Associates, Inc. v. Brown*,[12] which distinguished *Sutton* on the basis of specific lease terms in that lease.

---

[5] *Id.*
[6] *Id.*
[7] Compl. ¶ 11.
[8] *Sutton v. Jondahl,* 532 P.2d 478 (Okla. Civ. App. 1975).
[9] 712 A.2d 1011 (Del. Super. 1998), *aff'd,* 723 A.2d 397 (Del. 1998) (TABLE).
[10] *Sutton*, 532 P.2d at 482.
[11] *Id.*
[12] 1999 WL 458777 (Del. Super. May 6, 1999), *aff'd,* 781 A.2d 692 (Del. 2001).

2

For the casual reader, we review here the *Sutton* Rule and its iteration in Delaware:

**1.** ***Sutton v. Jondahl***

In 1970, a Mr. Jondahl was renting a home from Mr. Sutton.[13] Jondahl had previously given his son a chemistry set for Christmas and the son later started a chemical fire in the residence, causing damage.[14] The property was insured by its owner, Mr. Sutton, and the insurer paid for the repairs.[15] The insurance company then took the Jondahls to court, claiming that the tortfeasors were ultimately responsible for the damage and should be ordered to pay the insurance company back its loss. [16]

The Oklahoma Court of Appeals ruled that the insurance company had no right to subrogate its losses with a suit against the Jondahls. The Court may have sensed its precedential moment, waxing poetically:

> The principle of subrogation was begotten of a union between equity and her beloved—the natural justice of placing the burden of bearing a loss where it Ought to be. Being so sired this child of justice is without the form of a rigid rule of law.[17]

---

[13] *Sutton,* 532 P.2d at 479.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 479–80.
[17] *Id.* at 481–82.

The court reasoned that both the landlord and the tenant had an interest in the insured real estate—the landlord, an ownership interest, and the tenant, a possessory interest.[18] Therefore, they should be considered "co-insureds."

Since an insurance company cannot sue its own insured for the benefits the insurance was purchased for, subrogation would not be permitted.[19] Besides, said the Court, the real-life expectations of tenants in multi-tenant apartment complexes is that their rent, at least in part, pays for insurance against fire purchased by the landlord.[20] It is reasonable for tenants to expect that they do not need their own fire insurance, and duplicate insurance for the same event is economically wasteful.

---

[18] *Id*.
[19] *Sutton*, 532 P.2d at 481–82.
[20] *Id.*

## 2.  The *Sutton* Rule is Adopted in Delaware

The "*Sutton* Rule" has received its share of criticism.[21]  Some states have embraced it[22] and others have said "thanks but no thanks."[23]  Relevant to this discussion, Delaware adopted the *Sutton* Rule in *Lexington.[24]*  Like this case, *Lexington* involved a fire in an apartment complex, an insurance payout, and the insurer suing the negligent tenant for subrogation.  The Court adopted the *Sutton* Rule and ruled that the tenants were co-insured under the landlord's fire insurance policy, thus disabling the insurance company's right to pursue the tenants in subrogation.[25]

---

[21] *See, e.g.*, John A. Appleman & Jean Appleman, *Insurance Law and Practice* §4055, at 79 (Supp. 1991) (criticizing *Sutton* for citing no cases in support of its conclusion that the tenant is a co-insured with the lessor and making the point that the mere fact that both parties have insurable interests does not make them co-insured).

[22] E.g., *Alaska Ins. Co. v. RCA Alaska Commc'ns, Inc.,* 623 P.2d 1216, 1218 (Alaska 1981); *N. River Ins. Co. v. Snyder,* 804 A.2d 399, 403 (Me. 2002); *N.H. Ins. Grp. v. Labombard,* 399 N.W.2d 527, 531 (Mich. Ct. App. 1986); *Tri–Par Invs., L.L.C. v. Sousa,* 680 N.W.2d 190, 199–200 (Neb. 2004); *Cambridge Mut. Fire Ins. Co. v. Crete,* 846 A.2d 521, 523 (N.H. 2004); *GNS P'ship v. Fullmer,* 873 P.2d 1157, 1163 (Utah Ct. App. 1994); *Cascade Trailer Ct. v. Beeson,* 749 P.2d 761, 766 (Wash. Ct. App. 1988).

[23] E.g., *Neubauer v. Hostetter,* 485 N.W.2d 87 (Iowa 1992); *Paramount Ins. Co. v. Parker,* 112 So.2d 560 (Miss. 1959); *Zoppi v. Traurig*, 598 A.2d 19 (N.J. Super. Ct. Law Div. 1990); *Phoenix Ins. Co. v. Stamell,* 796 N.Y.S.2d 772 (N.Y. App. Div. 2005); *Winkler v. Appalachian Amusement Co.,* 238 79 S.E.2d 185 (N.C. 1953).

[24] 712 A.2d 1011 (Del. Super. 1998), *aff'd,* 723 A.2d 397 (Del. 1998) (TABLE).

[25] *Lexington*, 712 A.2d at 1015–17.

The specific rule of *Sutton,* and *Lexington*, does not repudiate subrogation entirely. Rather, the cases create a presumption against subrogation, subject to the parties' ability to shift the risk back to the tenant if the agreement clearly does so. The *Lexington* court, for example, said that "the terms of the lease imply that the tenants are liable for loss to person and personal property while the landlord is liable for loss from fire to the dwelling" but that this would only be true "absent some clearly expressed intent in the lease to the contrary."[26]

## E. The Lease

Resolution of this matter depends primarily on the language of the lease between Ms. Albert and Sovereign. Ms. Albert entered into a rental agreement[27] (the "Lease") with Sovereign in 2019.[28] The Lease was then renewed in 2020.[29] Relevant provisions will be referred to in the Court's analysis as necessary.

---

[26] *Id.* at 1016
[27] The rental agreement is comprised of a summary of the fundamental provisions, *see* Ex. A to Compl. at .pdf p. 3–5 [hereinafter "Lease Summary"], and the actual rental agreement, *see* Ex. A to Compl. at .pdf p. 6–10 [hereinafter "Lease"].
[28] Compl. ¶ 7.
[29] *Id.*

STANDARD OF REVIEW

## A. Motion for Summary Judgment

The Court will grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[30] In considering a motion for summary judgment, the Court construes the record in the light most favorable to the non-movant.[31] The movant bears the initial burden of demonstrating "clearly the absence of any genuine issue of fact."[32] If that burden is met, then the non-movant must offer "some evidence" of a material factual issue.[33] "If the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment."[34] Conversely, summary judgment is inappropriate "if there is any reasonable hypothesis by which the opposing party may recover, or if there is a dispute as to a material fact or the inferences to be drawn therefrom."[35]

## B. Lease Interpretation

In determining the meaning of the lease, the Court must consider the document as a whole.[36] Clear and unambiguous terms will be given their ordinary

---

[30] Super. Ct. Civ. R. 56(c).
[31] *E.g.*, *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).
[32] *Brown v. Ocean Drilling & Expl. Co.*, 403 A.2d 1114, 1115 (Del. 1979).
[33] *Phillips v. Del. Power & Light Co.*, 216 A.2d 281, 285 (Del. 1966).
[34] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[35] *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970).
[36] *E.g.*, *Fletcher v. Feutz*, 246 A.3d 540, 555 (Del. 2021) ("When interpreting a contract, this Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving

7

meaning.[37] "Any ambiguity in the terms of the lease will be strictly construed against the lessor."[38] The prevailing interpretation must be reasonable and give effect to the mutual intention of the parties.[39] "[I]t is not the job of a court to relieve . . . parties of the burdens of contracts they wish they had drafted differently but in fact did not."[40]

## ANALYSIS

### A. There is not a "clearly expressed intent in the lease to the contrary" in the lease between Ms. Albert and Sovereign.

Plaintiff insurer has chosen the lease terms as the field upon which to contest the *Sutton* presumption against subrogation.[41] Plaintiff argues that some clauses of the lease, taken together, evince a contract that overcomes the presumption that the tenant is a co-insured under the lease.[42]

---

effect to all its provisions." (quoting *Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014)).

[37] *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 696 (Del. 2019) (internal quotation marks omitted).

[38] *Lexington,* 712 A.2d at 1014 (citing *Paul v. Paul's Liquor Store Co.*, 217 A.2d 197, 199 (Del. Super. 1966)).

[39] *See, e.g., Salamone* 106 A.3d at 368 ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." (internal quotation marks omitted)).

[40] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006).

[41] Plaintiff does not advocate overturning the *Sutton* Rule or that some different facts take this case out of the *Sutton* Rule. Plaintiff takes aim solely at the lease terms, so the Court will confine its analysis to the issue raised by Plaintiff.

[42] Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4, D.I. 30 [hereinafter "Pl.'s Resp."].

Plaintiff believes that support for its position is found in *Deardorff.*[43] There, the Superior Court held that the insurer of a shopping mall could subrogate the claim of a landlord after the insurer paid out on a fire claim allegedly caused by a negligent tenant in the shopping center. The commercial lease at issue in that cause contained a number of clauses that share similarities with both the *Lexington* residential lease and the lease under consideration here. Notwithstanding, the Court in *Deardorff* found that the risk of fire had been shifted to the tenant.

### 1. Tenant's Liability for Negligence

Plaintiff says the *Deardorff* Court noted that the lease placed liability for negligence by the tenant on the tenant.[44] This, however, is not really a difference from the *Lexington* lease, which also held the tenant "solely responsible for all loss [or] damage to Resident's person or property or the property of any other person."[45] Nor is it different from any other lease for that matter.

---

[43] 1999 WL 458777 (Del. Super. May 6, 1999), *aff'd*, 781 A.2d 692 (Del. 2001).
[44] *Id.* at *4.
[45] *Compare Lexington*, 712 A.2d at 1013, *with* Lease Summary ¶ 17 ("Tenant is solely responsible for all damage to personal property and for all liability for injuries occurring within or near the Premises regardless of the cause of such damage including the negligence of Landlord."), *and* Lease ¶ 26 ("Landlord shall not be liable for any damage. . . arising from the necessity of repairing any portion of the building. . ."), *and* Lease ¶ 28 (". . .Tenant will be responsible for all damages accidentally, maliciously, intentionally, or negligently cause by the Tenant, Tenant's family, guests or invitees to any of the property of the Landlord.").

We can fairly expect that in every case in which the insurer seeks subrogation, it seeks compensation from a negligent tenant. And we can fairly expect that the tenant's negligence is the cause of the fire. The *Sutton* Rule assumes all of this and holds that, notwithstanding a general provision that the tenant is responsible for its negligent conduct, subrogation should be denied an insurer whose premiums were paid, in part, by the tenant's rent payments.[46]

## 2. The Landlord's Rules and Regulations

Plaintiff points to the lease provision requiring the tenant to abide by the Landlord's rules and regulations, then points to said regulations, which include provisions saying the tenant is responsible for the behavior of any family or other guests of the tenant and, if they commit crimes, the lease may be terminated.[47] In the Court's view, this is just a repetition of the "tenant liability for negligence" argument above and it adds nothing new to Plaintiff's position.

## 3. The Tenant Must Carry Liability Insurance

The lease requires the tenant to obtain "content and liability insurance" of $300,000.[48] Plaintiff says this means the parties intended for the insurer to have a

---

[46] *See Sutton,* 532 P.2d at 482.

[47] Pl.'s Resp. at 11–14; *see also* Lease ¶ 9(b) ("Tenant shall abide by the terms and conditions of the Landlord's rules and regulations concerning use, occupation and maintenance of the Rental Unit. . ."); Lease ¶ 28.

[48] Lease ¶ 12(b) ("Tenant agrees to procure and to maintain adequate content and liability insurance in an amount not less than $300,000.00 to afford protection against the risks herein assumed.").

right of subrogation against the tenant.[49]  But again, this does not advance Plaintiff's argument.

The lease in *Lexington* also required the tenant to carry renter's insurance.[50] The insurance requirement does not distinguish this case from *Lexington* and does not set forth a clear, unambiguous shift of the risk of fire damage or fairly place the tenant on notice that she may be subject to a subrogation claim by the property's fire insurer.  Rather, the mandatory "content and liability insurance" appears aimed at protecting the landlord from pesky lawsuits brought by injured tenants and guests of tenants, not to protect the owner from a catastrophic loss by fire.

In fact, the "fine print" of the lease in question proclaims:

> Tenant will not do, or suffer to be done, or keep, or suffer to be kept, or omit to do anything in, upon or about the Rental Unit which may prevent the obtaining of any insurance on the Rental Unit or on any property therein including, but not limited to, *fire,* extended coverage and public liability insurance, or which may make void or voidable any such insurance, or may create any extra premiums for or increase the rate of, any such insurance. If anything shall be done or kept or omitted to be done in, upon or about the Rental Unit which shall create any extra premiums for, or increase the rate of, any such insurance, Tenant will pay the increased cost of the same to Landlord upon demand as additional rent.[51]

---

[49] We note again that this is not an insurance coverage action.  In fact, the parties executed a rather unusual stipulation, D.I. 25, that includes a provision that "[t]he Superior Court will not be asked to make any substantive ruling as to the liability, damages, or the applicability of any insurance coverage for either the Plaintiffs or the Defendant." D.I. 25 ¶ 5.

[50] *See Lexington*, 712 A.2d at 1013.

[51] Lease ¶ 9(c) (emphasis added).

11

To the layman, that provision says, "don't do anything stupid enough to cause the fire insurance premiums to increase and, if you do, you have to pay for them in increased rent." The provision supposes that the operative fire insurance is the landlord's fire policy, the premiums for which are being captured via all the tenants' rental payments. All of which supports, rather than undermines, the *Sutton* Rule.

## 4. The Surrender Clause

After this brief journey, we arrive at the place where *Lexington*, *Deardorff* and this case all differ—a small difference, but sufficient to impress the *Deardorff* Court and, Plaintiff argues, distinguish this case from *Lexington.*

Anyone who has read a residential lease probably recalls a provision that says the tenant will return the property in the same condition in which it was rented, reasonable wear and tear excepted. This "surrender clause" is the source of controversy here.

The surrender clause in *Lexington* called for the tenant to surrender the apartment "in good condition and repair (reasonable wear and tear and damage by acts of God *or fire* excepted) . . ."[52] The *Lexington* court did indeed find that language supportive of the conclusion that the parties intended for the landlord to bear the risk of loss from fire.[53]

---

[52] *Lexington*, 712 A.2d at 1013 (emphasis added).
[53] *Id.* at 1014.

The surrender clause in *Deardorff* required surrender in good condition "ordinary wear and tear and casualties *by accidental fire not occurring through tenant's negligence* alone excepted."[54]  For the *Deardorff* court, this was a pivotal distinction from *Lexington* and the principal basis for finding that the negligent tenant bore the risk of loss.

Whether the risk allocation of something as significant as a catastrophic fire can be shifted by a single phrase in a surrender clause is dubious.  But further criticism is unnecessary since the surrender clause under consideration here did nothing to specifically assign the risk.

This surrender clause states that "[u]pon expiration or early termination of this Agreement, Tenant shall surrender the Rental Unit to Landlord in good condition and repair. . ."[55]  There is no reference to insurance, fire, risk of loss, or negligence.

What happens when the surrender clause says nothing about fire loss?  Well, we are not writing on a blank slate.  As Plaintiff concedes, Delaware has adopted the *Sutton* rule that tenants are presumed to be co-insured with the landlord and actions for subrogation are not permitted *unless it is otherwise clearly spelled out in the lease*.  Thus, this is not a matter of lease interpretation where the parties have left some material term out.  The *Sutton* presumption is that the tenant is co-insured, the

---

[54] *Deardorff*, 1999 WL 458777, at *3 (emphasis added).
[55] Lease ¶ 15.

insurer may not sue in subrogation, and the burden is on the insurer to demonstrate that a different result was bargained for in the lease document.

This point was articulated in *State Farm Fire & Casualty Co. v. Lambert*,[56] another tenant-fire related effort by an insurance company to subrogate its payout to the landlord. The insurer relied upon *Deardorff*. The Court said, however:

> [T]he Lease is silent in regard to liability for negligent fires as well as the parties' responsibilities for maintaining fire insurance. Hence, the Lease does not clearly express any contemplation of the division of fire risks between the landlord and tenant, nor does it express any intent by the landlord to hold the tenant liable for negligent fires.[57]

In the absence of a clearly expressed intent to the contrary, the court followed the *Sutton/Lexington* rule and granted judgment to the defense.

The Court accepts that clear assignment of the risk of fire loss could be assigned to the tenant and written into the lease. The Court also accepts that doing so—or at least getting tenants to pay separate insurance premiums to make it so—may be as unacceptable to the landlords as it would be for the tenants. But the interests of the insurers are not necessarily coincident with the interests of the landlords, which may explain why lease language remains less than crystal clear, all these years after *Sutton*.

---

[56] 2017 WL 5593784 (D. Del. Nov. 21, 2017).
[57] *Id.* at *3.

14

Given the absence of a clearly expressed intent to the contrary, Ms. Albert is a co-insured under the insurance policy and GuideOne cannot be granted relief on its subrogation action.

## CONCLUSION

For the foregoing reasons, Ms. Albert's motion for summary judgment is **GRANTED.**

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge